NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 231512-U

NOS. 4-23-1512, 4-23-1513, 4-23-1514 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 12, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACOB MARTIN, Defendant-Appellant. | ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Rock Island County Nos. 22CF480, 23CF316, 23CF317 Honorable Frank R. Fuhr, Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justice Zenoff concurred in the judgment.
Justice Turner specially concurred.

**ORDER**

¶ 1     *Held*: (1) In an appeal from a pretrial detention order, arguments made in the notice of appeal but not in the memorandum (should the defendant choose to file one) are regarded as abandoned.

(2) Arguments made in the memorandum but not made with specificity in the notice of appeal are forfeited.

¶ 2     In these three cases, Rock Island County case Nos. 22-CF-480, 23-CF-316, and 23-CF-317 (our case Nos. 4-23-1514, 4-23-1512, and 4-23-1513, respectively), the circuit court granted amended petitions by the State to deny defendant, Jacob Martin, pretrial release. The denials were pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today Act (Act). See

Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023). Defendant appeals in all three cases. We hold that he has either abandoned or forfeited the arguments he makes in these appeals. Therefore, we affirm the circuit court's judgments in these three cases.

¶ 3                                    I. BACKGROUND

¶ 4        On September 18, 2023, the circuit court held a pretrial detention hearing, in which the prosecutor made a proffer regarding one of the three cases on appeal: case No. 22-CF-480 (our case No. 4-23-1514). Essentially, the proffer was that defendant was in a stolen vehicle, exited the vehicle and ran, threw clothing and a gun as he was running, and made an incriminating statement after the police caught him and arrested him.

¶ 5        After this proffer, defense counsel argued the prosecutor had come forward with no evidence that defendant was a real and present threat to anyone or to the community. The circuit court inquired if it could "take judicial notice of the facts [it] had learn[ed]" at the preliminary hearing in case Nos. 23-CF-316 (our case No. 4-23-1512) and 23-CF-317 (our case No. 4-23-1513). Defense counsel responded with a question of his own:

> "So if you take judicial notice of those, you would take judicial notice of those in
>
> consideration as to whether or not he is to be detained on 480, which is detainable?
>
> THE COURT: Yes.
>
> [DEFENSE COUNSEL]: I object.
>
> THE COURT: Well, that's what I'm going to do.
>
> [DEFENSE COUNSEL]: Okay.
>
> THE COURT: So, based on the facts that came in front of me at the
>
> preliminary hearings on those two *** as well as his history in the judicial

delinquency system which he was repeatedly sentenced to Department of Corrections, and he's continued to show absolutely not only no respect for law, but endangering the lives of the community particularly the lives of law enforcement. He needs to be detained.

* * *

I'll detain him on 480 ***."

¶ 6 The prosecutor then asked the circuit court, "Can I have it on the two more recent ones as well?"—that is, case Nos. 23-CF-316 and 23-CF-317. Defense counsel remarked, "I don't see any other detainable offenses." The prosecutor rejoined, "They can be detainable if we can prove willful flight or dangerousness." The court agreed that "[t]hey could be detainable on willful flight." Defense counsel asked, "But was it alleged? Which ones?" The court said, "I will allow the State to amend [its] petition based on the facts as I determine them to be, which would show that he is not only a danger to the public but a threat to flight." Defense counsel objected, and the court acknowledged that the amendment would be over defense counsel's objection. After the court admonished defendant on his right to appeal within 14 days, the hearing was adjourned. (We note that the 14-day period for appealing does not begin until the court enters its written detention order (see Ill. S. Ct. R. 604(h)(2) (eff. Sept. 18, 2023)) and that the court did not do so until November 30, 2023.)

¶ 7 After this first pretrial detention hearing, which turned out to be limited to case No. 22-CF-480, the State filed amended petitions for the denial of pretrial release in all three cases. The amended petitions were a change from the original petitions in that the amended petitions included an allegation that defendant was prone to willful flight.

- 3 -

¶ 8 The second pretrial detention hearing was held on November 30, 2023. It was a consolidated hearing in all three cases.

¶ 9                                        A. Case No. 4-23-1512

¶ 10 In case No. 4-23-1512 (Rock Island County case No. 23-CF-316), the information was made up of four counts. Count I charged defendant with possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2022)), specifically, a Honda comfortable runabout vehicle (CR-V). Count II charged him with criminal damage to government supported property (720 ILCS 5/21-1.01(a)(1) (West 2022)) in that he knowingly damaged a squad car owned by the Rock Island Police Department. Count III charged him with aggravated assault (*id.* § 12-2(c)(7)) in that he knowingly ran the Honda into a vehicle driven by Alex Bowman. Count IV charged defendant with aggravated fleeing or an attempt to elude a peace officer (625 ILCS 5/11-204.1(a)(1) (West 2022)) in that, in disregard of the flashing emergency lights on the squad car of Rock Island police officer Tyler Evans, he fled Evans, exceeding the posted speed limit by at least 21 miles per hour.

¶ 11 On May 9, 2023, in a preliminary hearing (of which, as we have noted, the circuit court took judicial notice), Brett Buchen of the Rock Island Police Department testified substantially as follows. On March 16, 2023, in Rock Island, Illinois, at approximately 6:31 p.m., Rock Island police officer Alex Bowman reported that he saw a Honda traveling east on 11th Avenue at its intersection with 8th Street. The Honda was going fast, and Bowman knew that (1) the Honda had been reported stolen and (2) the Honda "had also been involved in numerous inciden[ts] of driving recklessly, swerving at officers both on foot and in squads and attempting to get officers to pursue that vehicle." Bowman, who was in uniform and in a marked squad car, turned east onto 7th Avenue and saw the Honda now traveling west on that avenue, toward him.

The two of them, Bowman and the Honda, turned south onto 11th Street, and the Honda pulled up alongside Bowman, on the passenger side of his squad car.

¶ 12        Buchen continued:

"Officer Bowman said he was able to look over and see the driver of the vehicle, identified him as [defendant], who he knows from many previous encounters. He had a mask on that was only covering only from his lips down, and he was holding a cell phone up appearing to be possibly recording as he pulled up next to the side.

Officer Bowman said that the vehicle then started swerving at his car, trying to hit his car ***."

¶ 13        The two vehicles turned west onto 12th Avenue, and Bowman turned off into an alley, allowing the Honda to continue west on 12th Avenue. When Bowman emerged from the alley and turned west onto 13th Avenue, a one-way street, he saw the Honda "sitting at 11th Street and 13th Avenue parked in the wrong lanes of travel[,] facing south[ ]." The Honda "then turned and came the wrong way down 13th Avenue and struck Bowman's car on the driver's side through to the bumper and then proceeded east[ ]." The resulting damage to the squad car was $4169.43.

¶ 14        Another police officer, who had been listening to the radio traffic, pursued the Honda. "[T]hat pursuit went through several parts of the city," Buchen testified, "ultimately coming out on the Milan Beltway, speeds reaching over 100 miles an hour, when it was discontinued because they lost sight of the vehicle." In fleeing the police in this high-speed chase, defendant ran 7 red lights and 13 stop signs.

¶ 15        On November 29, 2023, the State filed an amended petition for the denial of pretrial release. In its amended petition, the State alleged that the circuit court should deny pretrial release

because defendant was "charged with a forcible felony, or another felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement and the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community." See 725 ILCS 5/110-6.1(a)(1.5) (West 2022). The amended petition further alleged that defendant "ha[d] a high likelihood of willful flight to avoid prosecution" (see *id.* § 110-6.2(a)(8)) and that he committed the present charged offenses while he was on pretrial release in Rock Island County case Nos. 22-CF-656, 22-CF-675, and 22-DV-190.

¶ 16 In the pretrial detention hearing on November 30, 2023 (the second pretrial detention hearing), the proffer by the prosecutor was substantially the same as Buchen's testimony in the preliminary hearing—again, a hearing of which the circuit court had announced it would take judicial notice. The proffer made only two additions to the testimony that Buchen had given in the preliminary hearing. First, "defendant was on pretrial release in cases 22-CF-656, 22-CF-675, and 22-DV-190 and is charged with a new felony offense." Second, "Officer Bowman spoke to Rodney Scott, who stated he observed the [sport utility vehicle] intentionally turn around and strike Officer Bowman's squad [car,] corroborating Bowman's version of the events."

¶ 17 At the conclusion of this second detention hearing, the circuit court found as follows:

> "23-CF-316, I find by clear and convincing evidence that the proof is evident and the presumption great that he committed the offense—the qualifying offenses, aggravated assault, a forcible felony. I also find by clear and convincing evidence that he poses a real and present threat to the safety of the public as well as the specific persons in our community who take the obligation to access [*sic*] police officers, and he has specifically endangered police officers with his actions not just

- 6 -

in this specific case, but in—repeatedly in other cases and his actions of fleeing and eluding. So he's a risk of flight and he's a danger.

And once again, based on his history, the facts before me, the number of fending—pending felonies, his age, and his total disdain for any court orders or rule of law, I find that there are no conditions or series of conditions that could be imposed that would prevent him from endangering the public, police officers, or ensure his attendance at court."

¶ 18 On November 30, 2023, the circuit court entered a written order for detention, which, in its caption, bore all three case numbers (22-CF-480, 23-CF-316, and 23-CF-317). For the following reasons, the order found that "less restrictive conditions would not assure safety of any person or persons or the community":

"nature and circumstances of the offense

History and characteristic of offense

age of defendant."

The order further found that "defendant pose[d] a real and present threat of willful flight" because of the "repeated flight of defendant from police."

¶ 19 B. Case No. 4-23-1513

¶ 20 In case No. 4-23-1513 (Rock Island County case No. 23-CF-317), the information was made up of three counts. Count I charged defendant with the possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2022)), namely, a Nissan Sentra. This offense was a Class 2 felony. See *id.* § 4-103(b). Count II charged him with aggravated fleeing or an attempt to elude a peace officer (*id.* § 11-204.1(a)(1)) in that he disregarded the emergency lights on the squad car of a Rock Island police officer, Zachary Costas, and fled Costas by driving at least 21 miles per

hour over the posted speed limit. Count III charged defendant with aggravated fleeing or an attempt to elude a peace officer (*id.* § 11-204.1(a)(4)) in that when fleeing Costas, defendant disobeyed two or more traffic devices.

¶ 21    In its amended petition for the denial of pretrial release, the State claimed that pretrial release should be denied because defendant was "charged with *** a felony offense other than a Class 4 offense" and "ha[d] a high likelihood of willful flight to avoid prosecution." See 725 ILCS 5/110-6.1(a)(8) (West 2022).

¶ 22    In the preliminary hearing on May 9, 2023, Officer Buchen testified substantially as follows regarding this case. On March 17, 2023, at 8:09 p.m., Rock Island police officers Andrew Eagle and Zachary Costas were on patrol in a fully marked squad car. When stopped at an intersection, they saw a white Nissan Sentra pull up to the intersection. Costas was aware that the Nissan had been reported stolen. The police officers shone their spotlight on the driver of the Nissan and, from "multiple contacts with him," recognized him as defendant. He was wearing a black jacket and black beanie, and he appeared to reach under the driver's seat. The police officers turned on the emergency lights and siren of their squad car. Defendant sped away, going west onto 21st Avenue, and Eagle and Costas pursued him. "[T]he speeds reached up to 135 miles an hour in the 70 mile an hour zone on I-280, [and defendant] and his vehicle were still pulling away from [the] officers." Defendant "disregarded [three] stop signs *** during the pursuit on top of the speeds that were reached." Eventually, the stolen Nissan was found in an alley behind defendant's mother's house, in the 500 block of 17th Avenue in East Moline. The police arrested defendant at that address. A day later, defendant's mother turned over the keys of the Nissan to the police.

¶ 23    At the pretrial detention hearing of November 30, 2023, the proffer by the prosecutor added no material facts to the testimony Buchen had given regarding case No. 23-CF-317 at the preliminary hearing.

¶ 24    At the conclusion of the pretrial detention hearing, the circuit court found as follows:

"23-CF-317, I find by clear and convincing evidence that the proof is evident and presumption great that [defendant] committed the qualifying offense. Based on flight, he's got a couple of felonies. He fled at 135 miles an hour down the Milan Beltway, a busy thoroughfare, endangering everyone that was on the road at the time. He had numerous pending felonies at the time. His repeated flight from the officers indicates, in my opinion, that that is an intentional conduct with a purpose to thwart the judicial process by preventing his apprehension.

I also find that in the court—recent appellate court rulings that we've received so far, being out on bond under the prior law is considered a form of pretrial release. The new law—statute just eliminates the possibility of imposing as a condition of pretrial release the requirement that cash bond be posted. He was on pretrial release when these offenses were committed.

So for all those reasons, he is ordered to be detained. There are no conditions that could possibly provide for the safety of the public or ensure his attendance at court."

¶ 25                                    C. Case No. 4-23-1514

¶ 26    In case No. 4-23-1514 (Rock Island County case No. 22-CF-480), the information was made up of two counts. Count I charged defendant with possession of a stolen motor vehicle

(625 ILCS 5/4-103(a)(1), (b) (West 2022)), specifically, a Toyota Avalon. Count II charged him with aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (3)(A-5), (C) (West 2022)) in that while he was not on his land, in his legal dwelling or fixed place of business, or on the land or legal abode of another as an invitee, he had on his person a 9-millimeter pistol, "uncased, loaded, and immediately accessible at the time of the offense," and he had not been issued a firearm owner's identification card (FOID) or a concealed carry license (CCL) or permit.

¶ 27     In its amended petition for the denial of pretrial release, the State claimed that not only was aggravated unlawful use of a weapon a detention-eligible offense (see 725 ILCS 5/110-6.1(a)(6)(O) (West 2022)), but defendant "ha[d] a high likelihood of flight to avoid prosecution" (see *id.* § 110-6.1(a)(8)).

¶ 28     At the pretrial detention hearing of November 30, 2023, the prosecutor gave substantially the following proffer. On June 27, 2022, at 4:01 p.m., a police officer named Schroeder saw a Toyota Avalon that had been stolen from someone in Hampton, Illinois. The driver of the Toyota was "wearing dark clothing and a ski mask in broad daylight," and "[t]here had been previous calls about the car driver driving recklessly." Defendant got out of the Toyota and ran, "throwing clothing and a phone on to the ground while keeping something in his hand." Chasing defendant on foot, Eagle caught up with him and tackled him. Defendant had on his person "the key fob of the stolen car." A cell phone was on the ground.

¶ 29     The prosecutor continued:

> "Sergeant Anderson found a gun laying on the ground at a different location. Defendant claims that he got the vehicle from a guy named Antonio Brown. He admitted to having the gun in the car and to throwing it. He state—he is wearing a

ski mask—he stated he was wearing a ski mask because people were trying to kill him. There was a bullet hole in the vehicle that was stolen.

The defendant has no FOID card and no [CCL].”

¶ 30    The circuit court found as follows:

"So in 22-CF-480, I do find by clear and convincing evidence that the proof is evident and the presumption great that he committed the qualifying offense of unlawful use of a weapon, which is—carries a mandatory prison sentence for the dangerousness standard.

In light of the specific facts of the case as proffered, he was in the possession of a weapon and when he was stopped, he fled from the police, along with the very important fact that he later committed new offense while out on bond on that offense and repeatedly tried to avoid arrest and fled from the police in 23-CF-316 at over 100 miles an hour and 23-CF-317 over 135 miles an hour.

Also considering his history, his age, which he’s 20, and the fact that he has shown a complete not just lack of respect for, but disdain for any law or court order, I find in that case he’s not only a danger to the public but a risk of flight and that there are no reasonable conditions which could be imposed that would protect the public or ensure his attendance at court.”

¶ 31    At the conclusion of the hearing of November 30, 2023, after the circuit court announced its denial of pretrial release in all three cases, defense counsel said:

"MR. BREEDLOVE: [Defendant], I see you’re raising your hand. I’d advise you not to speak at this point. The judge has ruled. Anything that you say is

- 11 -

being recorded. The State could use it against you. We will be back tomorrow morning at 8:30 on your pretrial and I'll discuss whatever you need to discuss then.

    THE DEFENDANT: Breedlove, can I—can I please speak to you real quick, please?

    MR. BREEDLOVE: Yes. But not in—not here with the prosecution and the judge. Okay? We'll speak tomorrow morning. Okay?"

Against the advice of defense counsel, defendant proceeded to argue, "[T]he Supreme Court held that the Second Amendment guarantees one's right to bear arms in public for self-defense." Defense counsel interrupted defendant, telling him, "[T]his is something that you and I need to talk about. I know what you want to bring up. Now is not the—the time to bring it up. We will address it." Defendant then accused defense counsel of rendering ineffective assistance, and he demanded that defense counsel be taken off his case—a demand the court refused.

¶ 32    The circuit court then admonished defendant on his right to appeal the pretrial detention order within 14 days. Defendant said:

    "THE DEFENDANT: But, Breedlove—can I please make the appeal, Breedlove?

    THE COURT: Wait. Wait. Wait. [Defendant.] Is there anything else you want to talk to him about right now?

    THE DEFENDANT: Like, Breedlove, can you please talk to me now, please? Can you please come up here and talk to me right now?

    MR. BREEDLOVE: I will—I will be filing your notice of appeal, but I can't—I am not going to come speak with you right now. We are set tomorrow morning at 8:30. I will speak with you in the morning."

¶ 33                              II. ANALYSIS

¶ 34              A. Abandonment of the Arguments in the Notices of Appeal

¶ 35              Defendant has filed a single memorandum, which he intends to be applicable to all three of these consolidated appeals. As we will explain below, he makes three arguments in his memorandum.

¶ 36                              1. The Memorandum

¶ 37              First, the memorandum argues that, in case No. 4-23-1514 (Rock Island County case No. 22-CF-480), section 24-1.6(a)(1) and (3)(C) of the Criminal Code of 2012 (720 ILCS 5/24-1.6(a)(1), (3)(C) (West 2022))—a section defining the offense of aggravated unlawful use of a weapon—is facially unconstitutional under the second amendment (U.S. Const., amend. II) as interpreted by *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), and therefore cannot serve as the basis for denying him pretrial release. Defendant is charged with this offense in count II of the information.

¶ 38              Second, the memorandum argues that, in case No. 4-23-1512 (Rock Island County case No. 23-CF-316), it was unproven that aggravated assault (720 ILCS 5/12-2(c)(7) (West 2022)), as charged in count II of the criminal complaint, involved "the threat of or infliction of great bodily harm or permanent disability or disfigurement" (725 ILCS 5/110-6.1(a)(1.5) (West 2022)).

¶ 39              Third, the memorandum argues that, in all three appeals, defendant was denied his right to counsel under the sixth amendment (U.S. Const., amend. VI) when his appointed counsel refused to speak with him immediately at the conclusion of the pretrial detention hearing, telling defendant he instead would speak with defendant the following morning.

¶ 40                      2. The Notice of Appeal in Case No. 4-23-1512

¶ 41          Defendant makes the following arguments in his notice of appeal in case No. 4-23-1512.

¶ 42          First, "[t]he State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense(s) charged." See 725 ILCS 5/110-6.1(e)(1) (West 2022). On the blank lines following that argument is the following explanation:

> "The proffered testimony indicates that the pursu[ ]it was disregarded of the offending vehicle. The sole alleged identification comes from a police officer (Bowman) who alleges to have made it while the perpetrator was wearing a black face covering from his lips down, was holding a cell phone in front of his face and was while the perpetrator was swerving and driving wildly, and positioning the vehicle to strike officer Bowmans. The pursuit was not followed after vehicle speeds reached 100 mph, and there is no indication of any kind that the defendant was the perp that meets the states burden."

¶ 43          Second, "[t]he State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons in the community, based on the specific, articulable facts of the case." See *id.* § 110-6.1(e)(2). On the explanation lines is the following additional argument: "Based on the specific and articulable facts of the case, *** there is no evidence to show that it was the defendant that committed any of the alleged acts."

¶ 44          Third, "[t]he State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of

the case, or defendant's willful flight." See *id.* § 110-6.1(e)(3). Defendant argues on the explanation lines:

> "The defendant poses no specific threat.
>
> The defendant could be placed on a [Global Positioning System] monitor, which can determine if the defendant ever exceeds a specified speed limit to ensure there are no car chases involving the defendant."

¶ 45 Fourth, "[t]he court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor." See § 110-6(a). The explanation lines further argue, "There is no evidence to show that the defendant would be charged with additional crimes relevant to the this [*sic*] determination."

¶ 46 Fifth, on the explanation lines for "Other," defendant makes the following additional arguments:

> "In considering willful flight, the court erred in conflating willful flight from arrest with willful flight from prosecution. Here, there is no evidence the defendant would be a willful flight from prosecution, even assuming the defendant did commit the offenses as described in the proffer, the defendant would only have been fleeing arrest and apprehension, not prosecution.
>
> The court considered evidence outside the scope of this case by conducting a combined hearing and entering a combined order on multiple charges at the same time.

The court used a 'check-the-box' form and the 'nature and circumstances' and 'history and characteris[tics] in the 6.1(h)(1) section ignores legislative intent and law of this case for need of a detailed factual basis.

Defendant was not on pretrial release as alleged in state's petitions."

¶ 47                    3. The Notice of Appeal in Case No. 4-23-1513

¶ 48        Defendant makes the following arguments in his notice of appeal in case No. 4-23-1513.

¶ 49        First, "[t]he State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense(s) charged." See *id.* § 110-6.1(e)(1). On the blank lines following that argument is the following explanation: "There is no evidence in the proffer to show how or why Eagle or Costas were able to identify the defendant. Without that information, the state has not met its burden related to the standard of showing this defendant committed the offenses charged."

¶ 50        The second, third, fourth, and fifth arguments and accompanying explanations in case No. 4-23-1513 are identical to the second, third, fourth, and fifth arguments and accompanying explanations in case No. 4-23-1512.

¶ 51                    4. The Notice of Appeal in Case No. 4-23-1514

¶ 52        Defendant makes the following arguments in his notice of appeal in case No. 4-23-1514.

¶ 53        First, "[t]he State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense(s) charged." See *id.* § 110-6.1(e)(1). On the blank lines following that argument is the following explanation:

"There are bullet holes in the vehicle and the defendant claims he was being shot at. Given that there may be an affirmative defense of necessity under the circumstances, the proof is not clear that he committed the alleged offense in either count I or count II.

In addition, the charge in Count II is unconstitutional."

¶ 54    Second, "[t]he State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case." See *id.* § 110-6.1(e)(2). The explanation lines for this argument are blank.

¶ 55    Third, "[t]he State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or defendant's willful flight." See *id.* § 110-6.1(e)(3). Defendant argues on the explanation lines, "The defendant poses no specific threat to any individual or the community based upon the proffer in this case; rather, there are threats TO defendant from others."

¶ 56    The fourth and fifth arguments and accompanying explanations in case No. 4-23-1514 are identical to the fourth and fifth arguments and accompanying explanations in case No. 4-23-1512.

¶ 57    On the authority of *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶ 42, the State "maintains that, to the extent [that defendant's] memorandum makes different arguments from those in defendant's notices [of appeal], the arguments in defendant's notices are forfeited." In *Forthenberry*, the Fifth District held, "[I]f a memorandum is filed, it will be the controlling document for issues or claims on appeal and we will not reference the notice of appeal to seek out

further arguments not raised in the memorandum, except in limited circumstances, *e.g.*, to determine jurisdiction." *Id.*

¶ 58        In *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22, the Second District followed *Forthenberry*, holding that if a nonjurisdictional issue is raised in the notice of appeal but is left out of the memorandum (should the defendant choose to file one), the issue will be regarded as abandoned. The Second District said, "We deem the filing of a memorandum to reflect that an appellant has elected to abandon any arguments that were raised in his or her notice of appeal but not also pursued in the memorandum." *Id.*

¶ 59        In accordance with *Rollins*, we conclude that defendant has abandoned all arguments except the three arguments he makes in his memorandum.

¶ 60                    B. Forfeiture of the Arguments in the Memorandum

¶ 61        Defendant's first argument in his memorandum pertains to case No. 4-23-1514. He argues that the statute defining the offense of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (3)(C) (West 2022)) violates the second amendment (U.S. Const., amend. II) as interpreted by *Bruen*. Defendant does not specifically make this argument, however, in his notice of appeal in case No. 4-23-1514. "[Illinois Supreme Court] Rule 604(h) [(eff. Sept. 18, 2023)], which governs appeals under the Act, states that '[t]he Notice of Appeal shall describe the relief requested and the grounds for the relief requested,' and the form notice of appeal prescribed by [Illinois Supreme Court] Rule 606(d) [(eff. Sept. 18, 2023)] requires the defendant to describe those grounds in detail." *People v. Martin*, 2023 IL App (4th) 230826, ¶ 18. The vague assertion, in the notice of appeal, that "the charge in Count II is unconstitutional" is not a detailed description of the grounds for relief. Therefore, we hold that the second amendment challenge to the statute defining the offense of aggravated unlawful use of a weapon is forfeited. See *id.* ¶ 19.

¶ 62 The second argument in defendant's memorandum pertains to case No. 4-23-1514. He argues it was unproven that aggravated assault (720 ILCS 5/12-2(c)(7) (West 2022)), as charged in count II of the criminal complaint, involved "the threat of or infliction of great bodily harm or permanent disability or disfigurement" (725 ILCS 5/110-6.1(a)(1.5) (West 2022)). He did not make this argument in his notice of appeal in case No. 4-23-1514. Granted, in his notice of appeal, defendant argued, "The State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons in the community, based on the specific, articulable facts of the case." See 725 ILCS 5/110-6.1(e)(2) (West 2022). That argument, however, addresses the question of a present or future threat, whereas the argument in defendant's memorandum addresses the question of a threat in the past (when defendant allegedly sideswiped Officer Bowman's squad car). Because those are two significantly different arguments, the second argument in defendant's memorandum is forfeited. See *Martin*, 2023 IL App (4th) 230826, ¶ 19.

¶ 63 The third argument in defendant's memorandum pertains to all three cases. He argues he was denied his right to counsel under the sixth amendment (U.S. Const., amend. VI) when his appointed counsel refused to speak with him immediately at the conclusion of the pretrial detention hearing, telling defendant he instead would speak with him the following morning. Defendant did not make this argument in any of his notices of appeal. Therefore, this argument is forfeited. See *id.*

¶ 64                                    C. Explanation of Good Cause

¶ 65 Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 7, 2023) provides, "After the appellant has filed the Notice of Appeal, supporting record, and any memorandum and the time for filing any response and memorandum has expired, the Appellate Court shall consider and

decide the appeal within 14 days, except the court may extend the deadline for good cause."
Because this appeal involves three cases, each with a multitude of issues, we have somewhat
exceeded that deadline. We believe we have good cause for extending the deadline.

¶ 66                                III. CONCLUSION

¶ 67            For the foregoing reasons, we affirm the circuit court's judgments in case Nos.
4-23-512, 4-23-1513, and 4-23-1514.

¶ 68            Affirmed.

¶ 69            JUSTICE TURNER, specially concurring:

¶ 70            I agree with the majority we should affirm the trial court's judgment but write
separately to note I would have found the trial court did not abuse its discretion in detaining
defendant.