NOTICE
Decision filed 04/01/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240037-U

NO. 5-24-0037

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 23-CF-1593 |
| | ) | |
| JOSHUA T. DAVIS, | ) | Honorable |
| | ) | Brett N. Olmstead, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court's order granting the State petition to deny pretrial release is affirmed where the trial court's findings that the defendant committed a qualifying offense and that no condition or combination of conditions would mitigate the threat posed by the defendant were not against the manifest weight of the evidence.

¶ 2     The defendant, Joshua T. Davis, appeals the trial court's order denying him pretrial release pursuant to Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] See Pub. Acts 101-652, § 10-255, 102-1104,

---

[1]The press and politicians have also sometimes referred to the Act as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act.

§ 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023).[2]

¶ 3                                  I. BACKGROUND

¶ 4      On December 19, 2023, the defendant was charged in Champaign County, by information, with unlawful possession of weapons by a felon in violation of section 24-1(a)(2) of the Criminal Code of 2012 (720 ILCS 5/24-1(a)(2) (West 2022)), a Class 2 felony, "in that the defendant, a person who has been convicted of Aggravated Discharge—Firearm, a forcible felony under the law of Illinois, in the Circuit Court of Champaign County, Illinois, in cause number 2009 CF 926, knowingly possessed on or about his person any weapon prohibited under 720 Illinois Compiled Statutes 5/24-1(a)(2), namely a Stihl folding saw, said folding saw being any other dangerous or deadly weapon or instrument of like character to the enumerated items in 720 ILCS 5/24-1(a)(2), with the intent to use the same unlawfully against another." The defendant was also charged with criminal trespass to residence in violation of section 19-4(a)(2) of the Criminal Code of 2012 (*id.* § 19-4(a)(2)), a Class 4 felony. The same day, the State filed a petition to deny the defendant pretrial release, alleging the proof was evident and the presumption great that the defendant committed an offense listed in section 110-6.1(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a) (West 2022)) and the defendant posed a real and present threat to the safety of any person or persons or the community.

¶ 5      The trial court conducted a hearing on the State's petition on December 20, 2023. A pretrial investigation report revealed that the defendant was 37 years old and unemployed. He had resided

---

[2]Pursuant to Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 7, 2023), our decision in this case was due on or before March 27, 2024, absent a finding of good cause for extending the deadline. Based on the high volume of appeals under the Act currently under the court's consideration, as well as the complexity of issues and the lack of precedential authority, we find there to be good cause for extending the deadline.

in Champaign County for most of his life and had relatives who were also local residents. The defendant reported that he would walk to the courthouse to attend hearings should he be released. The defendant denied any history of mental illness. He reported that he had undergone drug abuse treatment numerous times, with the last time being in 2016.

¶ 6     The defendant had prior convictions for (1) possession of a weapon by a felon for which he was sentenced to 7 years' incarceration, (2) aggravated battery of a peace officer for which he was sentenced to 5 years' incarceration, (3) aggravated discharge of a firearm for which he was sentenced to 191 days' incarceration and 48 months' probation, (4) possession of a controlled substance for which he was sentenced to 2 years' incarceration, and (5) domestic battery for which he was sentenced to 12 months' conditional discharge. The defendant scored a 6 out of a possible 14 on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R), which indicated a 14.9% chance that he would violate pretrial release conditions.

¶ 7     The State proffered the following information. On December 28, 2023, deputies with the Champaign County Sheriff's Office were dispatched to 388 Wayne Street in Mahomet, Illinois, on a report of a possible home invasion. The reporting person, Brenda Kinkade, resided at the residence with her elderly mother. Ms. Kinkade reported that an individual, later identified as the defendant, forced his way into her home and was armed with a baseball bat. She stated to officers that she did not know the defendant. The defendant had earlier knocked at her door. Upon opening the door, Ms. Kinkade observed that the defendant was holding a baseball bat. When she attempted to close the door, the defendant stopped it with his foot and entered the residence. Thereafter, the defendant walked around inside the residence. Ms. Kinkade and her mother went to a bedroom where Ms. Kinkade called 911. The officers made contact with the defendant who had a baseball bat. The defendant was also found to have a Stihl folding saw with a 6.3-inch blade in his pocket.

3

The defendant stated that he did not know the residents of the home. The State asked the court to take into consideration the defendant's criminal history.

¶ 8       Defense counsel proffered that the defendant was fully compliant with the officers; he put down the bat when instructed to do so and he advised them that he had the saw in his pocket. The defendant left the residence before the police arrived and presumably made no threats to the residents. The defendant went to the residence because a book told him to go there.

¶ 9       The State argued that it had presented clear and convincing evidence that the defendant violated section 24-1(a)(2) of the Criminal Code of 2012 (720 ILCS 5/24-(a)(2) (West 2022)). It conceded that the folding saw was not listed as a dangerous weapon in the statute but argued that it fell under the catchall provision of "any other dangerous or deadly weapon or instrument of like character." The State averred that the saw was akin to a folding knife in that it opened up. It reiterated that the saw had a six-inch blade with very sharp teeth. The State argued that the saw was something that "could very easily be of like character of the other items in that paragraph." The State further argued that the defendant had gone to the home of strangers armed with a dangerous saw that was similar to knives intending to use it against them. It opined that the defendant was a danger to the community because he was willing to enter random peoples' homes knowing they were present. It noted that a no-contact order would not help. It stated, "If the Court's not willing to detain, I would ask to address conditions, but we're seeking detention first and foremost."

¶ 10     After a brief recess to allow the defendant to speak with defense counsel, defense counsel told the court that he had one fact to add. He stated that the defendant did not force his way into the home, but rather was allowed into the home. Defense counsel then argued that the State had not presented clear and convincing evidence that the defendant had committed a detainable

offense. He further argued that there was "absolutely no indication that [the defendant] was using an item of like character with an intent to harm anyone else." Defense counsel averred the defendant's cooperation with police mitigated any indication of dangerousness. He opined that the defendant was a long-time resident of the area, which indicated stability. Defense counsel suggested that a mental health evaluation was more appropriate for the defendant's situation and for the public's safety than putting him in jail.

¶ 11    The trial court stated that it considered the fact presentations, pretrial investigation report, and arguments of counsel. The court noted that the charged offense that was detainable was unlawful possession of a weapon by a felon. It further noted that the defendant had a felony conviction. The court stated, "the question is whether the folding saw qualifies" under the statute and further stated that the statute required that the weapon "be carried or possessed with the intent to use it unlawfully against someone else." It found that the State met its burden by clear and convincing evidence of showing the offense was detainable. It stated that the facts presented indicated that the defendant went to the residence of people he did not know with a bat and a folding saw in his pocket because a book told him to do so. The court stated, "And he's armed. He's armed with a bat and he's armed with this thing in his pocket. And he's not there to do something good. He's there to do something unlawful. That's the inference there."

¶ 12    The trial court further found the State met its burden, by clear and convincing evidence, that no condition or combination of conditions could mitigate the defendant's threat to the community. It noted the defendant's significant criminal record which included two convictions for weapon felonies and the defendant's unemployment. The court then stated, "GPS monitoring doesn't mean anything here because this home, this home and these people don't mean anything to him. They don't know him. So there's no GPS I can enter that's gonna prevent him from going

5

to the next house that he thinks a book has told him to go to." The trial court then advised the defendant of his appeal rights.

¶ 13    In its written order, the trial court stated in its findings regarding whether the defendant committed a detainable offense that, in addition to the baseball bat, the defendant "had in his pocket a Stihl folding saw with a 6.3 [inch] blade, which he also had no reason to possess other than as a weapon meant for unlawful conduct." The order further found the defendant posed a real and present threat and no condition or combination conditions could mitigate the real and present threat he posed. It summarized its findings as follows:

> "Mr. Davis's conduct that day, of which the State has clear and convincing evidence, was terrifying and extremely dangerous, and demonstrates distorted perceptions diminishing Mr. Davis's ability to refrain from such conduct. The victim was home with her elderly and infirm mother, and Mr. Davis forced his way into their home armed with weapons for a purpose that appears irrational. The defense's presentation included the facts that (1) Mr. Davis said he was at the house because a book told him to go to that address, and (2) Mr. Davis currently believes that he was allowed in the home, which further demonstrates Mr. Davis's ongoing distorted perceptions as it is completely inconsistent with what the victim said or what a reasonable person in her position would do if a strange man appeared at the door with a bat in his hand. Mr. Davis has a serious criminal record, including three prior DOC sentences, two weapon felonies including Aggravated Discharge, and a prior offense of being a Felon in Possession of a Weapon, the same charge he faces today, for which he served 7 years in DOC and was not deterred. He's established a pattern as a person who, when he loses the will or ability to refrain from dangerous conduct, engages in seriously dangerous conduct, and that is his condition today. GPS is useless because Mr. Davis had

6

no connection to the victims here and it is unrealistic to believe it would deter him when he decides to follow what he believes a book has told him to do and, given the level of dangerousness involved here, no conditions of release can mitigate the real and present threat that he poses to community safety."

The order thereafter committed the defendant to the custody of the sheriff for confinement in the county jail pending trial. The defendant timely filed his notice of appeal on January 2, 2024.

¶ 14 The Office of the State Appellate Defender (OSAD) was appointed to represent the defendant on appeal. On February 13, 2024, OSAD filed a Rule 604(h) memorandum in support of defendant's appeal. On March 8, 2024, the State filed a responsive Rule 604(h) memorandum.

¶ 15                                II. ANALYSIS

¶ 16 Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)). A defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1. After filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e). The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the trial court concludes the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)). If the trial court determines that the defendant should be denied

7

pretrial release, the court is required to make written findings summarizing the reasons for denying pretrial release. *Id.* § 110-6.1(h)(1).

¶ 17    The statute provides a nonexclusive list of factors that the trial court may consider in making a determination of "dangerousness," *i.e.*, that the defendant poses a real and present threat to any person or the community. *Id.* § 110-6.1(g). In making a determination of dangerousness, the court may consider evidence or testimony as to factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant;[3] (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 18    Once the trial court finds the State proved a valid threat to the safety of a person or persons or the community and/or a defendant's likelihood of willful flight to avoid prosecution, the court must then determine what pretrial release conditions, "if any, will reasonably ensure the

---

[3]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2022).

appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In its determination, the trial court must consider (1) the nature of the circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* No singular factor is dispositive. See *id.*

¶ 19    To reverse a trial court's finding that the State presented clear and convincing evidence of a defendant's dangerousness or that conditions of release would fail to protect any person or the community, the reviewing court must conclude that the trial court's findings were against the manifest weight of the evidence. See *People v. Swan*, 2023 IL App (5th) 230766, ¶ 12; see also *In re C.N.*, 196 Ill. 2d 181, 208 (2001) (setting a similar standard of review for requirement of clear and convincing evidence by the State in juvenile proceedings). " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *Swan*, 2023 IL App (5th) 230766, ¶ 12 (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)). "Under the manifest weight standard, we give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses." *Deleon*, 227 Ill. 2d at 332. The trial court's ultimate decision to deny pretrial release is reviewed for an abuse of discretion. *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. "An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person agree with the position adopted by the trial court." *Id.*; see also *People v. Heineman*, 2023 IL 127854, ¶ 59.

9

"[I]n reviewing the circuit court's ruling for abuse of discretion, we will not substitute our judgment for that of the circuit court, 'merely because we would have balanced the appropriate factors differently.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 15 (quoting *People v. Cox*, 82 Ill. 2d 268, 280 (1980)).

¶ 20    OSAD argues that we should apply a *de novo* standard of review as set forth in the special concurrence in *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 98-102 (Ellis, J., specially concurring). We do not agree. According to the *Saucedo* special concurrence, a *de novo* standard of review is warranted because of the gravity of the question involved. *Id.* ¶ 104. In support of this argument, the special concurrence explains that in *In re D.T.*, 212 Ill. 2d 347 (2004), the Illinois Supreme Court rejected the deferential abuse of discretion for a best interest determination in child custody or parental right termination cases due to the fundamental liberty interest in parental care. *Saucedo*, 2024 IL App (1st) 232020, ¶¶ 108-10. The special concurrence is misguided as the court in *In re D.T.* determined the burden of proof the State must meet at a best interest hearing, not the standard of review on appeal. *In re D.T.*, 212 Ill. 2d at 358, 366. Moreover, despite a parent's fundamental liberty interest in the care, custody, and management of their child, an appellate court reviews a trial court's best interest of the child determination only to determine if that finding is against the manifest weight of the evidence. *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 32. Thus, like appellate review of best interest determinations, we will continue to review the trial court's findings under a manifest weight of the evidence standard and disagree that the standard undermines the importance of the issue before us.

¶ 21    We also find the *Saucedo* special concurrence's argument that *de novo* review is required because there is no live testimony at most detention hearings equally unpersuasive. All the cases cited by the *Saucedo* special concurrence in support of this position regard documented testimony

(discovery depositions or transcripts) or other documentary evidence. *Saucedo*, 2024 IL App (1st) 232020, ¶¶ 99-100 (Ellis, J., specially concurring) (collecting cases). Under the Code, the parties "may present evidence at the hearing by way of proffer based upon reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2022). Proffers differ from purely documentary evidence in that proffers do not represent a wholly objective view of the evidence. A proffer apprises the court of "what the offered evidence is or what the expected testimony will be, by whom it will be presented and its purpose." (Internal quotation marks omitted.) *People v. Weinke*, 2016 IL App (1st) 141196, ¶ 41. The State and the defendant are allowed to present competing proffers of evidence, provided the evidence is based upon reliable information. 725 ILCS 5/110-6.1(f)(2) (West 2022). Pretrial detention hearings also differ in that "the rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." *Id.* § 110-6.1(f)(5). A pretrial detention hearing thus necessarily requires the court to consider the reliability of the evidence as presented and weigh the competing proffers to determine whether the State met its burden of proof. Therefore, we find that pretrial detention hearings are distinguishable from the cases relied upon in the *Saucedo* special concurrence. Accordingly, the *Saucedo* special concurrence fails to convince this court to alter our standard of review.

¶ 22    On appeal, the defendant requests that this court reverse the trial court's order denying him pretrial release. Although the defendant utilized a notice of appeal form with boxes to check next to each of the preprinted "Grounds for Relief" and "Imposing Conditions of Pretrial Release," he checked no boxes. However, under each potential issue for review, the defendant included generalized assertions. In its memorandum, OSAD contended that the State failed to prove by clear and convincing evidence that the defendant was charged with a qualifying offense and the State failed to prove no conditions could mitigate the threat the defendant posed. In *People v.*

11

*Forthenberry*, 2024 IL App (5th) 231002, ¶ 42, this court held "if a memorandum is filed, it will be the controlling document for issues or claims on appeal and we will not reference the notice of appeal to seek out further arguments not raised in the memorandum, except in limited circumstances, *e.g.*, to determine jurisdiction." Other appellate districts have also adopted this holding. See also *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22; *People v. Martin*, 2024 IL App (4th) 231512-U, ¶¶ 57-59. Accordingly, despite the general assertions listed in the defendant's notice of appeal under each issue, we will address only the arguments raised by OSAD in the Rule 604(h) memorandum.

¶ 23    OSAD first contends that the State failed to meet its burden of proving by clear and convincing evidence that the defendant was charged with a qualifying offense. It argues that a folding saw does not qualify as the type of prohibited weapon set forth in section 24-1(a)(2) of the Criminal Code of 2012 (720 ILCS 5/24-1(a)(2) (West 2022)).

¶ 24    Section 24-1 in pertinent part states:

> "(a) a person commits the offense of unlawful use of weapons when he knowingly:
>
> ***
>
> (2) Carries or possesses with intent to use the same unlawfully against another, a dagger, dirk, billy, dangerous knife, razor, stiletto, broken bottle or other piece of glass, stun gun or taser or any other dangerous or deadly weapon or instrument of like character[.]" *Id.*

The common law definition of "dangerous weapon" involves the division of "dangerous objects into three categories: (1) objects that are dangerous *per se*, such as loaded guns; (2) objects that are not necessarily dangerous, but were actually used ***; and (3) objects that are not necessarily

12

dangerous, but may become dangerous when used in a dangerous manner." *People v. Ross*, 229 Ill. 2d 255, 275 (2008).

¶ 25    The defendant's Stihl folding saw falls into the third category. The saw had a 6.3-inch blade with sharp teeth. There is no question that it could be dangerous if used nefariously. However,

> "the unlawful weapons statute is not intended to make the possession of every tool, implement, or sporting device, which has the potential to inflict serious bodily harm an unlawful weapon. Common sense must be the guide. Such an approach acknowledges the character of the device and its potential for harm, while not being oblivious to the article's everyday use, the circumstances of its discovery, and in certain cases, the person's explanation as to its presence or possession." *City of Pekin v. Shindledecker*, 99 Ill. App. 3d 571, 574 (1981).

Here, the circumstances were such that the defendant forced his way into a stranger's home, wielding a baseball bat. In addition to being armed with a baseball bat, the defendant was found to possess a sharp-toothed folding saw in his pocket when he was searched. Under the circumstances, common sense indicates that the defendant could have used the saw as a weapon if he had chosen to do so and the use of a saw with a sharp-toothed 6.3-inch blade could have been very dangerous and inflicted bodily harm. Moreover, the circumstances in no way support that the defendant intended to use the saw for its everyday use. Therefore, we find that the saw falls under the purview of "other dangerous *** weapon" in the unlawful use of weapons statute. 720 ILCS 5/24-1(a)(2) (West 2022).

¶ 26    For purposes of section 24-1(a)(2), "knowingly carrying or possessing a dangerous weapon *with intent to use the same unlawfully against another* constitutes the offense of unlawful use of

weapons." (Emphasis added.) *People v. Kincy*, 106 Ill. App. 3d 250, 254 (1982). "It is proof of that intent, 'or circumstances from which such intent is reasonably inferrable,' that is required." *In re Marquita M.*, 2012 IL App (4th) 110011, ¶ 29 (quoting *People v. Sullivan*, 46 Ill. 2d 399, 403 (1970)). Again, the State's proffer evidenced that the defendant forced his way into a stranger's home while wielding a baseball bat. He was at the home because, according to the defendant, a book told him to go there. As noted by the trial court, the defendant was not there to do something good. Given these circumstances, it is reasonable that the court would infer from them that the defendant had the intent to use the saw unlawfully against the home's residents. Moreover, the defendant has not given any other reason why he had the saw. Therefore, we find that the Stihl folding saw falls within the definition of a prohibited weapon under the unlawful use of weapons statute (720 ILCS 5/24-1(a)(2) (West 2022)) and the court's finding in this regard was not against the manifest weight of the evidence.

¶ 27    OSAD next argues that the State failed not only to prove that no conditions could mitigate any threat posed by the defendant, but it also failed to address conditions of release. It further argues that as a result of the State's failure to address conditions of release, there was no clear and convincing evidence that no conditions would mitigate the threat to any person or the community posed by the defendant.

¶ 28    The State argues that the defendant's detention was necessary because lesser conditions would not mitigate the defendant's threat to other persons or the community. It avers that its proffer showed the defendant was being held for a detainable offense and that the trial court explained its reasoning on the record, including its consideration and rejection of lesser conditions which included GPS monitoring. It opines, "[t]he bizarre and extremely dangerous facts surrounding defendant's arrest clearly show that he is a threat to any person or persons and to the community

14

at large." The State further argues that the trial court did not abuse its discretion in ordering the defendant's detention. It avers the court considered and applied the factors listed in section 110-5(a) of the Code (725 ILCS 5/110-5(a) (West 2022)) and explained its analysis of the facts and evidence presented in its decision to detain the defendant.

¶ 29    OSAD cites *People v. Stock*, 2023 IL App (1st) 231753, in support of its argument that the State failed to prove that no conditions could mitigate any threat posed by the defendant. In that case, as in this case, the State presented a factual proffer but no evidence that no conditions contained in section 110-10(b) of the Code would mitigate the threat the defendant posed to any person or the community. *Id.* ¶ 17. The *Stock* court stated:

"This is not to say that alleged facts stating the basic elements of an offense are not relevant or are not part of the proof that no conditions could mitigate the threat posed by a defendant. But more is required. If the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release. In other words, if alleging that defendant discharged a firearm and struck a person was sufficient to show that no conditions of pretrial release could mitigate any threat, then no defendant charged with aggravated battery/discharge of a firearm would ever be eligible for pretrial release. That is clearly at odds with the statute's presumption of eligibility for all defendants, and the plain language of article 110 of the Code indicates that more is required." *Id.* ¶ 18.

¶ 30    The *Stock* court found that the State's reliance on only its factual proffer about the allegations did nothing to establish that no combination of conditions could mitigate the threat posed by the defendant. *Id.* ¶ 19. It stated, "We cannot infer on behalf of the State that there is no conceivable combination of conditions that could mitigate the threat. Without something more the

15

trial court's finding was against the manifest weight of the evidence ***." *Id.* The *Stock* court further found that the trial court's order denying pretrial release underscored the lack of proof presented by the State in that it stated in the blank space allotted for the finding only that " 'The defendant shot a firearm at the complaining witness.' " *Id.* ¶ 20. The appellate court found the trial court's oral pronouncement contained no specific reasoning either. *Id.* The court went on to hold that, "Without clear and convincing proof of this element, there is no basis upon which to detain defendant, and the trial court erred in its determination that no condition or combination of conditions could mitigate the threat posed by defendant." *Id.* ¶ 21.

¶ 31 We find *Stock* to be distinguishable from the case now before us. Here, while the State did not specifically address GPS monitoring as a pretrial condition, it did address the condition of a no-contact order. Also, unlike *Stock*, the trial court here clearly considered whether GPS monitoring was a viable condition. Moreover, there is no requirement that the State must make an argument as to every possible condition of release. Rather, its burden is that it must *present* clear and convincing evidence that no conditions would mitigate the risk posed by the defendant. 725 ILCS 5/110-6.1(e)(3) (West 2022). Here, the trial court explained that neither GPS monitoring nor other conditions could mitigate the risk based on the defendant's criminal history and his odd/mentally unstable behavior of randomly choosing to enter a home with dangerous weapons based on what he perceived a book told him to do. Further distinguishing this case from *Stock*, the State presented this evidence at the hearing, and the evidence is more than the basic elements of the charged offense (which is being a felon and possessing a dangerous weapon intending to use it against another). Therefore, we do not find *Stock* to be controlling.

¶ 32 For the foregoing reasons, we agree with the State that the trial court's finding that the State's proffer showed by clear and convincing evidence that lesser conditions would not mitigate

16

the defendant's threat to other persons or the community was not against the manifest weight of the evidence. Moreover, we agree with the State that the trial court did not abuse its discretion in ordering the defendant's detention. We find that the court considered and applied the factors listed in section 110-5(a) of the Code (*id.* § 110-5(a)) and explained its analysis of the facts and evidence presented in its decision to detain the defendant. Therefore, we affirm the trial court's order detaining the defendant.

¶ 33                                    III. CONCLUSION

¶ 34    The State sufficiently proved that the Stihl folding saw recovered from the defendant falls within the definition of a prohibited weapon under the unlawful use of weapons statute (720 ILCS 5/24-1(a)(2) (West 2022)) and is thus a qualifying offense. The State also sufficiently proved there was no condition or combination of conditions that would mitigate the threat to others or the community posed by the defendant, and the court's detention order regarding the less restrictive conditions finding complied with section 110-6.1(h)(1) of the Code. Accordingly, we affirm the trial court's pretrial detention order.

¶ 35    Affirmed.