NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200517-U

NO. 4-20-0517

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 5, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Douglas County |
| DAVID N. CULP, | ) | No. 19CF80 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Richard Lee Broch Jr., |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Harris and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed in part, reversed in part, and remanded for further proceedings, concluding (1) the State presented sufficient evidence to establish the *corpus delicti* supporting defendant's conviction of aggravated criminal sexual assault, but (2) defendant was denied his right to conflict free postsentencing counsel where a *per se* conflict of interest existed.

¶ 2    Following a December 2019 stipulated bench trial, the trial court found defendant, David N. Culp, guilty of aggravated criminal sexual assault (720 ILCS 5/11-1.30(b)(i) (West 2018)).  In February 2020, the trial court sentenced defendant to 16 years in prison pursuant to a joint recommendation from the parties.

¶ 3    Defendant appeals, arguing (1) the State failed to prove the *corpus delicti* of aggravated criminal sexual assault where the only evidence of sexual penetration between defendant and the minor, A.N.N., was defendant's statement to police and (2) defendant was denied his right to counsel during postsentencing proceedings when his postsentencing counsel

had a *per se* conflict of interest based on contemporaneous representation of a State witness. The State concedes a conflict of interest existed during the hearing on defendant's motion to reconsider sentence. We affirm in part, reverse in part, and remand with directions.

¶ 4                                    I. BACKGROUND

¶ 5        In May 2019, the State charge defendant, who was 16 years old, with aggravated criminal sexual assault (720 ILCS 5/11-1.30(b)(i) (West 2018)), where defendant "a person under 17 years of age, committed an act of sexual penetration with A.N.N., age 3 years, in that said defendant caused contact between his sex organ and A.N.N.'s sex organ, at a time when A.N.N. was under 9 years of age when the act was committed." The trial court appointed Douglas County Public Defender James Lee to represent defendant. Defendant's case was automatically transferred from juvenile court to criminal court, and he was tried as an adult, as required by statute (705 ILCS 405/5-130(1)(a) (West 2018)).

¶ 6                        A. Defendant's Stipulated Bench Trial

¶ 7        In December 2019, the trial court admonished defendant of his right to a jury trial and explained the nature of a stipulated bench trial. Defendant freely and voluntarily waived his right to a jury trial. Defendant also indicated he had no objection to a stipulated bench trial and agreed the stipulated testimony would be the testimony of the witnesses. Both parties agreed the stipulated bench trial "would be only a stipulation as to the facts which would be presented, and not a stipulation as to the sufficiency of the evidence to convict at trial." Defendant's case then proceeded to a stipulated bench trial where the parties "tendered to the Court [a] document entitled Stipulated Bench Trial, consisting of six pages which contains the stipulated testimony which would be presented by the State's Attorney's office should this matter have proceeded to trial." The parties presented the following stipulated evidence.

¶ 8        Jimmie Nichols, A.N.N.'s father, would testify that on May 19, 2019, while visiting A.N.N. he noticed a "green discharge coming from A.N.N.'s vaginal area." Subsequently, Nichols took A.N.N. to Carle Convenient Care in Urbana, Illinois, for medical treatment where she tested positive for the sexually transmitted disease, gonorrhea. Nichols submitted to testing himself as a source of transmission and was found to be negative.

¶ 9        Dawn Brazzell, a registered nurse employed by Carle Foundation Hospital in Urbana, would testify that on May 19, 2019, she treated A.N.N. with antibiotics after she tested positive for gonorrhea. Brazzell also notified Nichols, Rebecca Higgs—A.N.N.'s mother, the Newman Police Department, and the Illinois Department of Children and Family Services that "A.N.N. had tested positive for gonorrhea and that A.N.N. may have been sexually assaulted."

¶ 10       Robyn Carr, a forensic interviewer employed by the Children's Advocacy Center in Charleston, Illinois, would testify that on June 3, 2019, she interviewed A.N.N in connection with the ongoing sexual assault investigation. During the interview, Carr asked A.N.N. to identify body parts on an anatomical chart diagram of a boy and a girl. A.N.N. did not answer when asked if she was a boy or girl, or whether she liked to take a bath or shower. "A.N.N. then pointed to a boy's penis and giggled." A.N.N. called the boy's penis a "butt." Carr went over the body parts with A.N.N., and A.N.N. called the vagina a "butt[,]" and called the breast area "boobs." "On the boy anatomical diagram, A.N.N. colored the penis area on a boy." Carr asked A.N.N. if anyone had done something to her body and A.N.N. said "yes." Carr "pointed to the vagina on the body chart and asked if anyone touched that spot. [A.N.N.] said 'yes.' "

¶ 11       Rebecca Higgs, A.N.N.'s mother, would testify that prior to A.N.N. testing positive for gonorrhea she noticed "some redness around her daughter's vaginal area, but had attributed it to potty training and poor wiping." After A.N.N.'s positive gonorrhea diagnosis,

- 3 -

Higgs notified Chief Burton with the Newman Police Department that "she was aware" that defendant had also tested positive for gonorrhea. Higgs would further testify that on May 11, 2019, Higgs left A.N.N. alone with defendant when she went to the hospital after sustaining injuries resulting from a domestic battery involving her boyfriend, Carlon Michaels.

¶ 12          Nathan Burton, chief of police of the Newman Police Department, would testify that on May 24, 2019, he interviewed defendant at his residence in connection with the investigation into the sexual assault of A.N.N. Chief Burton told defendant "he was not in custody." Defendant confirmed to Chief Burton that on May 16, 2019, he tested positive for gonorrhea and "provided Chief Burton with medical documents confirming the positive gonorrhea test results." Defendant indicated to Chief Burton that he believed he had transmitted the disease to A.N.N. by scratching his penis area and not washing his hands before he helped A.N.N. wipe after she used the bathroom. Defendant also told Chief Burton that he later "helped Rebecca put cream on A.N.N.'s vagina because it was red and irritated." During the interview, defendant denied having sexual contact with A.N.N.

¶ 13          On May 31, 2019, Chief Burton interviewed defendant at the Newman Police Department. Chief Burton told defendant he was not in custody and could go home after the interview. Prior to asking defendant questions, Chief Burton read defendant his "constitutional rights via the Newman Police Department Juvenile *Miranda* Form." "Defendant indicated he understood his rights and signed the form and agreed to talk with Chief Burton." Defendant admitted to Chief Burton that he stayed at Higgs's house alone with A.N.N. for a period of time while Higgs went to the hospital. Initially, defendant denied he had sex with A.N.N. However, when Chief Burton asked defendant if he ever touched his penis to A.N.N.'s vagina without inserting his penis inside of her, defendant stated, "he was not going to lie and 'yes, that

- 4 -

happened.' " Defendant explained that A.N.N. needed assistance with her underwear, and he removed his own clothes and touched "her clit" with his penis. Defendant indicated he inserted his penis approximately one-quarter of an inch into A.N.N.'s vagina.

¶ 14       A.N.N. would testify that she was three years old and lived with her mother. She would identify body parts on anatomical diagrams, calling a boy's penis a "butt" and calling the breast area of the girl's anatomical body diagram, "boobs." A.N.N. would color the penis area on the boy's anatomical body diagram. "A.N.N. would point to the vaginal area on the anatomical body chart of a girl diagram and, when asked if she had been touched there by someone, she would say 'yes.' "

¶ 15       As to the medical records, the parties stipulated:

"The People enter into evidence medical records from Carle Foundation Hospital confirming A.N.N.'s positive test result for gonorrhea for a test taken on May 17 [*sic*], 2019; medical records from Sarah Bush Lincoln Health Center confirming [d]efendant's positive test result for gonorrhea for a test taken on May 16, 2019; medical records from OSF Saint Francis Medical Center confirming Jimmie Nichol's negative test result for gonorrhea for a test taken on May 21, 2019; and medical records from Carle Foundation Hospital confirming Carlon Michael's negative test result for gonorrhea for a test taken on May 27, 2019."

¶ 16       Both parties waived argument, and defendant declined to present evidence for the purpose of the stipulated bench trial. The trial court reviewed the contents of the written

stipulation as to the facts and determined the State proved each element of the charge beyond a reasonable doubt. The court found defendant guilty of a single count of aggravated criminal sexual assault.

¶ 17             B. Defendant's Sentencing Hearing and Posttrial Motion

¶ 18             At a February 14, 2020, sentencing hearing, the parties informed the trial court they had an agreed disposition to recommend defendant be sentenced to 16 years in prison. The State indicated it would not present further evidence in aggravation but rather it would rely on the information in the presentence investigation (PSI) report. Public Defender Lee also indicated he would not present evidence in mitigation and would rely on the PSI report. Subsequently, the trial court sentenced defendant to 16 years in prison pursuant to the joint recommendation from the parties.

¶ 19             On February 19, 2020, Public Defender Lee filed a motion to reconsider defendant's sentence. At an October 7, 2020, hearing, Lee argued the motion on defendant's behalf. Ultimately, the trial court denied defendant's motion to reconsider sentence.

¶ 20             This appeal followed.

¶ 21                          II. ANALYSIS

¶ 22             On appeal, defendant argues (1) the State failed to prove the *corpus delicti* of aggravated criminal sexual assault where the only evidence of sexual penetration between defendant and the minor, A.N.N., was defendant's statement to police and (2) defendant was denied his right to counsel during postsentencing proceedings when his postsentencing counsel had a *per se* conflict of interest based on contemporaneous representation of a State witness. We address each issue in turn.

¶ 23                          A. *Corpus Delicti*

¶ 24    Defendant argues the State failed to prove the *corpus delicti* of aggravated criminal sexual assault where the only evidence of sexual penetration between defendant and A.N.N. was defendant's statement to police. "Defendant's contention is a challenge to the sufficiency of the evidence." See *People v. Hurry*, 2013 IL App (3d) 100150-B, ¶ 11, 4 N.E.3d 128.

¶ 25    When considering the sufficiency of the evidence, we determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the required elements of the crime beyond a reasonable doubt. *People v. Bradford*, 2016 IL 118674, ¶ 12, 50 N.E.3d 1112. In a bench trial, it is for the trial judge, sitting as the trier of fact, to determine the credibility and weight of the testimony, to resolve the inconsistencies and conflicts therein, and to render its decision accordingly. *People v. Berland*, 74 Ill. 2d 286, 305-06, 385 N.E.2d 649, 658 (1978). On review, this court does not retry the defendant. *People v. Wheeler*, 226 Ill. 2d 92, 114, 871 N.E.2d 728, 740 (2007). "A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67, 23 N.E.3d 325.

¶ 26    "The *corpus delicti* of an offense is simply the commission of a crime." *People v. Lara*, 2012 IL 112370, ¶ 17, 983 N.E.2d 959. To sustain a conviction, the State must prove that (1) a crime occurred, *i.e.*, the *corpus delicti*, and (2) the crime was committed by the defendant. *People v. Harris*, 333 Ill. App. 3d 741, 744, 776 N.E.2d 743, 746 (2002). "In general, the *corpus delicti* cannot be proven by a defendant's admission, confession, or out-of-court statement alone." *Lara*, 2012 IL 112370, ¶ 17. When a defendant's confession or admission is part of the proof of the *corpus delicti*, the State must also provide independent corroborating evidence. *Id.*

¶ 27	The independent corroborating evidence alone does not need to establish beyond a reasonable doubt that an offense occurred. *Id.* ¶ 18. Instead, the *corpus delicti* rule is satisfied if the independent evidence, or the reasonable inferences therefrom, tends to prove that an offense occurred and corroborates some of the circumstances contained in the defendant's confession or admission. *Id.* ¶ 45. The corroborating evidence must only "correspond" with the confession, it does not need to affirmatively verify every element of the charged offense. *Id.* "If the corroborating evidence is sufficient, it may be considered, together with the defendant's confession, to determine if the State has sufficiently established the *corpus delicti* to support a conviction." *Id.* ¶ 18. The same evidence may be considered to prove both the existence of the crime and the guilt of the defendant, the question being whether all the evidence proves that a crime was committed, and that the accused committed it. *People v. Willingham*, 89 Ill. 2d 352, 359, 432 N.E.2d 861, 864 (1982).

¶ 28	"A person commits aggravated criminal sexual assault if that person is under 17 years of age and *** commits an act of sexual penetration with a victim who is under 9 years of age." 720 ILCS 5/11-1.30(b)(i) (West 2018). " 'Sexual penetration' means any contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including, but not limited to, cunnilingus, fellatio, or anal penetration. Evidence of emission of semen is not required to prove sexual penetration." 720 ILCS 5/11-0.1 (West 2018). To prove defendant guilty of aggravated criminal sexual assault (720 ILCS 5/11-1.30(b)(i) (West 2018)), the State had to establish beyond a reasonable doubt that defendant (1) was under 17 years of age and

A.N.N. was under 9 years of age and (2) defendant committed an act of sexual penetration with A.N.N.

¶ 29    Defendant argues the stipulated evidence was insufficient to convict him. Specifically, defendant argues that while the stipulated evidence proves the age element of his charge, the State failed to prove sexual penetration where it relied solely on his statement to Chief Burton to prove that element of the offense. Defendant contends the *corpus delicti* was not proven because the State relied solely on his confession. Defendant maintains that other than defendant's confession to Chief Burton, no other evidence showing his penis came in contact with A.N.N.'s vagina, as would be required to prove sexual penetration, was introduced. In support of his argument, defendant cites *People v. Lambert*, 104 Ill. 2d 375, 472 N.E.2d 427 (1984).

¶ 30    In *Lambert*, the Illinois Supreme Court found the only evidence independent of the defendant's confession that he performed an act of deviate sexual conduct with a four-year-old boy was that he and the boy slept in the same room one night two to three weeks before the boy's mother noticed his rectum appeared pink and swollen. *Id.* at 379-80. "The State failed to present medical evidence to establish the possible causes for the condition of the boy's rectum." *Id.* at 380. The supreme court specifically stated, "The State failed to present evidence which established any relationship between the victim's condition on June 8 and the commission of a crime which was charged by indictment to have occurred on May 26." (Internal quotation marks omitted.) *Id.* Accordingly, the supreme court held the defendant's confession was not sufficiently corroborated by independent evidence. *Id.* We find *Lambert* distinguishable.

¶ 31        When examined as a whole, the stipulated evidence corroborated defendant's confession for purposes of proving the *corpus delicti*. As stated above, the corroborating evidence must only "correspond" with the confession, it does not need to affirmatively verify every element of the charged offense. See *Lara*, 2012 IL 112370, ¶ 45.

¶ 32        Here, the stipulated testimony provided that prior to A.N.N. testing positive for gonorrhea, Higgs observed "some redness around her daughter's vaginal area." On May 19, 2019, Nichols noticed "a green discharge coming from A.N.N.'s vaginal area." Subsequently, Nichols took A.N.N. to Carle Convenient Care for medical treatment where she tested positive for gonorrhea. After learning of A.N.N.'s positive test for gonorrhea, Higgs notified Chief Burton that "she was aware" that defendant had also tested positive for gonorrhea. Higgs would also provide that on May 11, 2019, she left A.N.N. alone with defendant while she went to the hospital.

¶ 33        The stipulation also provided that "[t]he People enter into evidence medical records." Specifically, the stipulation provided the medical records confirmed both A.N.N. and defendant tested positive for gonorrhea around the same time. The stipulation also stated that medical records confirmed Nichols and Higgs's boyfriend tested negative for gonorrhea at that time. Moreover, defendant also confirmed to Chief Burton that on May 16, 2019, he tested positive for gonorrhea, and he "provided Chief Burton with medical documents confirming the positive gonorrhea test results."

¶ 34        We find the State provided sufficient independent evidence by way of stipulation to corroborate defendant's confession for purposes of proving sexual penetration. The circumstantial corroborating evidence established a relationship between the victim's condition on May 19 and defendant's commission of aggravated criminal sexual assault. Within a short

time frame, A.N.N. tested positive for gonorrhea after defendant tested positive for gonorrhea and was alone with A.N.N.  Moreover, the State's evidence outside of defendant's confession need not independently prove the penetration element of the charge.  See *Lara*, 2012 IL 112370, ¶ 18.  Rather, when viewed as a whole, the stipulated circumstantial evidence combined with defendant's confession that he touched his penis to A.N.N.'s vagina was sufficient to prove the *corpus delicti*.  Accordingly, when viewing the evidence in the light most favorable to the State, we find the State presented sufficient evidence for the trial court to find defendant guilty beyond a reasonable doubt.

¶ 35                                 B. *Per Se* Conflict of Interest

¶ 36          Last, defendant argues he was denied his right to counsel during postsentencing proceedings when his postsentencing counsel had a *per se* conflict of interest based on contemporaneous representation of a State witness.  Defendant asserts he was unaware of the contemporaneous representation and thus did not waive his right to conflict-free representation. The State concedes a conflict of interest existed during the hearing on defendant's motion to reconsider sentence.  As a result, the State contends this court should reverse the denial of defendant's motion to reconsider and remand for appointment of new counsel and a new hearing on the motion.  We accept the State's concession.

¶ 37          "[A] criminal defendant's sixth amendment right to effective assistance of counsel includes the right to conflict-free representation."  *People v. Fields*, 2012 IL 112438, ¶ 17, 980 N.E.2d 35.  A *per se* conflict of interest exists "[w]hen a defendant's attorney has a tie to a person or entity that would benefit from an unfavorable verdict for the defendant."  *People v. Hernandez*, 231 Ill. 2d 134, 142, 896 N.E.2d 297, 303 (2008).  A defendant need not show actual prejudice when a *per se* conflict exists. *Id.* at 143.  The Illinois Supreme Court has identified

three categories where a *per se* conflict exists: "(1) when defense counsel has a contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) when defense counsel contemporaneously represents a prosecution witness; and (3) when defense counsel was a former prosecutor who was personally involved in the prosecution of the defendant." *People v. Yost*, 2021 IL 126187, ¶ 66. When the record shows that the facts are undisputed, the issue of whether a *per se* conflict exists is a legal question to be reviewed *de novo*. *Fields*, 2012 IL 112438, ¶ 19.

¶ 38        Here, Public Defender Lee contemporaneously represented defendant and Higgs, the victim's mother. On February 19, 2020, Public Defender Lee filed a motion to reconsider defendant's sentence. At an October 7, 2020, hearing, Lee argued the motion on defendant's behalf. Ultimately, the trial court denied defendant's motion to reconsider sentence.

¶ 39        In October 2019, Higgs pleaded guilty to the offense of aggravated criminal sexual abuse and was sentenced to probation in Douglas County case No. 19-CF-75. We take judicial notice of the docket sheet for Douglas County case No. 19-CF-75 as it is a public record available on the Judici.com website. See *Village of Riverwoods v. BG Ltd. Partnership*, 276 Ill. App. 3d 720, 724, 658 N.E.2d 1261, 1265 (1995) ("Judicial notice is proper where the document in question is part of the public record and where such notice will aid in the efficient disposition of a case."). Douglas County Public Defender T. Jeannine Garrett represented Higgs during her guilty plea proceedings.

¶ 40        On July 28, 2020, the State filed a petition to revoke probation in Higgs's case. On July 29, 2020, the trial court appointed Public Defender Lee to represent Higgs in the petition to revoke her probation. Lee entered his appearance and made a general denial of the allegations. Lee continued to represent Higgs, and at an October 1, 2020, hearing, with Lee

- 12 -

present, the trial court modified the terms of Higgs's probation by agreement of the parties. We take judicial notice of the public website of the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois (ARDC), where only one attorney licensed to practice law in Illinois is named James Douglas Lee. See *Village of Riverwoods*, 276 Ill. App. 3d at 724. Therefore, we conclude the same attorney represented both defendant and Higgs.

¶ 41 As Public Defender Lee represented Higgs while defendant's motion to reconsider sentence was pending, a *per se* conflict of interest existed. The motion to reconsider defendant's sentence had been filed and was pending when Lee was appointed to represent Higgs in July 2020. Lee resolved the motion to reconsider defendant's sentence on October 7, 2020, six days after Lee resolved Higgs's pending petition to revoke her probation. As previously noted, the State concedes a *per se* conflict of interest existed. However, the parties disagree as to the proper remedy.

¶ 42 Defendant argues this court should reverse the denial of his motion to reconsider sentence and remand for the appointment of new counsel, thereby providing an opportunity for counsel to amend his motion to reconsider sentence and hold a new hearing on the motion to reconsider defendant's sentence. The State asserts that because Lee did not represent Higgs until after defendant's motion to reconsider sentence had been filed, the appropriate remedy would be for this court to reverse the denial of defendant's motion to reconsider sentence and remand for a new hearing on the motion with new counsel appointed. We agree with the State, as we find the *per se* conflict of interest did not arise until July 2020, well after Lee filed defendant's motion to reconsider sentence.

¶ 43 Accordingly, we affirm defendant's conviction, but reverse the denial of defendant's motion to reconsider sentence, and remand for a new hearing on the motion with new counsel appointed.

¶ 44 III. CONCLUSION

¶ 45 For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings.

¶ 46 Affirmed in part and reversed in part.

¶ 47 Cause remanded.