NOTICE

Decision filed 04/16/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 231367-U

NO. 5-23-1367

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 23-CF-1563 |
| | ) | |
| JOHNNIE L. MORGAN, | ) | Honorable |
| | ) | Brett N. Olmstead, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Boie and McHaney concurred in the judgment.

**ORDER**

¶ 1      *Held*: We affirm the trial court's order detaining defendant where the trial court's findings were not against the manifest weight of the evidence, the court's detention order was not an abuse of discretion, and defendant's remaining arguments on appeal were either abandoned or insufficient evidence is contained in the record to avoid the forfeiture.

¶ 2      Defendant, Johnnie L. Morgan, appeals the trial court's order denying his pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as

1

September 18, 2023). For the following reasons, we affirm the trial court's order denying defendant pretrial release.[1]

¶ 3                              I. BACKGROUND

¶ 4     On December 13, 2023, defendant was charged, by information, with aggravated driving under the influence of alcohol (DUI) in violation of section 11-501(d)(2)(E) of the Illinois Vehicle Code (625 ILCS 5/11-501(d)(2)(E) (West 2022)), a Class X felony, in that defendant drove or was in actual physical control a motor vehicle at a time when defendant was under the influence of alcohol and had five previous DUI violations consisting of two prior Champaign County cases (00-DT-145 and 03-DT-335), one McLean County case (00-CF-1210), one Douglas County case (05-DT-59), and one DUI in Knox County, Indiana, that occurred in 2010. The same day, the State filed a verified petition to deny defendant pretrial release, alleging the proof was evident and the presumption great that defendant committed an offense under section 110-6.1(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a) (West 2022)) and posed a real and present threat to the safety of any person or persons or the community.

¶ 5     A pretrial investigation report was also filed on December 13, 2023. The report noted that defendant resided in Champaign County for the last 20 years, had three children and other family in the area, and worked as a union operator the last 34 years for Local 841. Defendant reported that his daughter would provide reliable transportation to and from court if released. Defendant reported no history of drug abuse or mental health problems. He provided his daughter as a collateral contact, but the information had not yet been verified. Defendant scored a 2 out of a

---

[1]Pursuant to Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 7, 2023), our decision in this case was due on or before March 15, 2024, absent a finding of good cause for extending the deadline. Based on the high volume of appeals under the Act currently under the court's consideration, as well as the complexity of issues and the lack of precedential authority, we find there to be good cause for extending the deadline.

possible 14 on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R), which placed him in the lowest level for risk of pretrial misconduct. The pretrial investigation report listed 15 prior convictions, that included four DUI convictions in Ford County case No. 05-CF-72 (2006), Champaign County case No. 03-DT-355 (2003), McLean County case No. 00-CF-1210 (2001), and Champaign County case No. 00-DT-145 (2000), four convictions for driving on a suspended or revoked license in Champaign County case No. 12-F-1538 (2013), De Witt County case No. 03-CF-78 (2006), Douglas County case No. 05-DT-59 (2006), and McLean County case No. 01-CF-21558 (2001), and a domestic battery conviction in Champaign County case No. 09-CM-1044 (2010). The report also revealed convictions for writing a bad check in 2010, possession of a controlled substance in 1998, criminal damage to property and disorderly conduct in 1997, burglary and theft of a firearm in 1988 and burglary in 1987.

¶ 6     The hearing on the State's petition was held on December 14, 2023. The State proffered that, after observing violations of the Illinois Vehicle Code, police turned on emergency lights and attempted a traffic stop on defendant for Illinois Vehicle Code violations. Defendant continued to drive and eventually turned in to a private driveway. When officers made contact with defendant and asked him why he did not stop, defendant stated that he did not notice the emergency lights. Police noted that defendant emitted an odor of alcohol, and observed that he had watery and glossy eyes, and was swaying. Defendant admitted to drinking. Police conducted field sobriety tests and defendant showed signs of impairment. A blue jug, containing ice and a tan liquid, was located behind the passenger seat and had a strong odor of alcohol. Defendant claimed the liquid in the jug was urine. Defendant refused chemical testing stating, "you already did the field sobriety. I'm not doing that."

¶ 7    During his fact presentation, defense counsel noted that defendant was employed and scheduled to work the following day. He further stated that defendant's daughter was available to provide defendant with transportation "and things of that nature which should mitigate any threat to the community."

¶ 8    The court requested clarification regarding Douglas County case No. 05-DT-59 because the pretrial investigation report did not indicate that case was a prior DUI. The State explained that it checked the publicly available information on the website "judici.com," and the information revealed that the Douglas County case involved a DUI conviction. The State also proffered that the pretrial investigation report did not list defendant's 2010 Knox County, Indiana, DUI, but defendant's Illinois driving abstract listed the DUI and the Illinois Secretary of State verified that the DUI came out of Knox County, Indiana. Upon further query by the court, the State confirmed that defendant's license was revoked at the time of current offense.

¶ 9    Following the court's query, the trial court provided defense counsel an opportunity to reopen the fact presentation. Defense counsel declined stating, "And I appreciate that, your Honor, but I don't have anything additional."

¶ 10    Thereafter, the State argued this was defendant's sixth DUI, making it a nonprobationable Class X felony. It argued that the legislature made it a Class X felony for a reason. The State also argued that defendant continued to drive while intoxicated and was putting the community at risk every time he got behind the wheel. The State noted that defendant's driver's license had been revoked since the first DUI in 2000, but defendant continued to drive as was evident here, and had other driving infractions including driving while his license was suspended or revoked. The State argued that not having a driver's license had not stopped defendant from either driving or driving while intoxicated. The State further argued that it was concerning that defendant self-reported no

4

history of drug abuse or mental health problems during the pretrial investigation despite his long history of DUIs. The State noted that while the pretrial investigation report indicated defendant's daughter would be reliable transportation for defendant, that information had not been verified. It concluded that defendant was a threat to the community because he continued to drive while under the influence. Defense counsel argued that defendant was not a threat to any individual and that pretrial conditions—such as prohibiting defendant from driving and possessing alcohol—were sufficient to prevent any danger to the community.

¶ 11 The court stated that it considered the pretrial investigation report, the parties' fact presentation and argument, and all the relevant factors whether specifically mentioned or not. It found the State presented clear and convincing evidence of DUI against defendant and that such offense was a nonprobationable Class X felony given his prior convictions. The court then moved on to the State's other burdens of proof stating,

> "The State also has to show by clear and convincing evidence that there is no condition or combination of conditions that can mitigate the real and present threat Mr. Morgan poses, and here what they're alleging is a threat to community safety. DUI is an offense that carries an enormous danger to community safety.
>
> Now, Mr. Morgan has a full-time job. He has other responsibilities here, long-time connection in the community, 20 years in Champaign County. There's a whole lot that ties in here that would indicate a stability and, you know, a desire by him to comply with any pretrial release order that the Court would enter and then there's also the Virginia pretrial risk assessment score of 2, and *** the reason I note this is here's the situation. I believe the State's met that burden of proof, and the reason is this, because I think the Virginia

5

pretrial risk assessment has a real blind spot for DUI in general and this DUI offense with the prior record that it shows.

I think [the State] mentioned some of it. To score the instrument as history of drug abuse zero and current charge not being a felony drug charge. I think that's a blind spot within the development of the risk assessment instrument, but putting that aside Mr. Morgan's not supposed to be behind the wheel of a car at all. Just being—driving the vehicle is a crime for him and then what the evidence says is more than just DUI, and I'm not relying just on the offense charged. It's not that. If you look back at his record to \*\*\* the last time that he was in this full on alcohol driving mode he was an extreme danger over and over and over and over and over again to the public driving. It looks now like he's relapsed[,] and it looks now like he's back to that point and is extremely dangerous.

The State's request is granted. There is no set of conditions the Court could impose here that could mitigate the real and present threat he poses to community safety."

The court therefore granted the State's petition and detained defendant.

¶ 12　The same day, the court entered a detention order finding defendant committed a qualifying offense because, after police attempted to pull defendant over and defendant parked in a private driveway, admitted to drinking, and showed indicators of impairment on field sobriety tests. The order also stated that defendant had prior convictions alleged in the charge making the DUI a nonprobationable Class X felony. The order also found defendant posed a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts, and that no condition, or combination of conditions, could mitigate the real and present threat described below. Therein the court's order stated,

"Mr. Morgan has significant ties to the community, full-time employment, and family in the area, but his license has been revoked for a long time and he should not even have been behind the wheel of a car, let alone driving drunk again. His criminal history is starting to age, but what it shows is that that when his drinking is out of control, he presents an extreme danger to the safety of everyone on the road and cannot control his drinking, his driving, or his drive to combine the two. The Court infers that in his many, many DUI sentences he has repeatedly had the opportunity to engage in treatment and learn how dangerous his behavior was. The State now has clear and convincing evidence that he has relapsed, and relapse for Mr. Morgan means enormous and uncontrolled. The VPRAI-R score of 2 demonstrates a blind spot in the instrument for this type of offense and record, rather than an accurate assessment of his risk. No conditions of release can mitigate the real and present threat he poses to community safety."

¶ 13    Defendant timely appealed. The Office of the State Appellate Defender (OSAD) was appointed to represent defendant on appeal and filed its appearance on January 25, 2024. OSAD filed a Rule 604(h)(2) memorandum, arguing that (1) the detention must be vacated because defendant's prior convictions do not elevate the aggravated DUI as a Class X offense and any lesser version of the offense is nondetainable, (2) the trial court's finding of dangerousness was unsupported by the record, and (3) even if defendant posed a safety threat to the community, any such danger could be mitigated by conditions of release.

¶ 14    The State filed its Rule 604(h)(2) memorandum on February 26, 2024. Therein, it argued that the first argument raised in OSAD's memorandum was forfeited. It further argued that the State proved by clear and convincing evidence that defendant committed a detainable offense,

7

defendant posed a real and present threat to the safety of the community, and no condition, or combination of conditions, would mitigate defendant's dangerousness.

¶ 15                                   II. ANALYSIS

¶ 16    From the outset, we note that in the notice of appeal, defendant argued that the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or presumption great that defendant committed the charged offense and the court erred in determining that no condition, or combination of conditions, would reasonably ensure defendant's appearance for later hearing or prevent him from being charged with a subsequent felony or Class A misdemeanor; however, OSAD did not make such arguments in its Rule 604(h)(2) memorandum. In *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶ 42, this court held "if a memorandum is filed, it will be the controlling document for issues or claims on appeal and we will not reference the notice of appeal to seek out further arguments not raised in the memorandum, except in limited circumstances, *e.g.*, to determine jurisdiction." Other appellate districts have also adopted this holding. See also *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22; *People v. Martin*, 2024 IL App (4th) 231512-U, ¶ 59. Accordingly, we will address only the arguments raised by OSAD in the Rule 604(h)(2) memorandum.

¶ 17    Pretrial release is governed by the Act as codified in article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)). A defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1. After filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and (3) less restrictive

conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f).

¶ 18　The statute provides a nonexclusive list of factors that the trial court may consider in making a determination of "dangerousness," *i.e.*, that the defendant poses a real and present threat to any person or the community. *Id.* § 110-6.1(g). In making a determination of dangerousness, the court may consider evidence or testimony as to factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 19　If the trial court finds the State proved a valid threat to a person's safety or the community's safety, the trial court must then determine what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real, and

present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 20    In order to reverse a trial court's findings that the State presented clear and convincing evidence showing defendant posed a real and present threat to any person or person or the community and no less restrictive conditions would avoid such threat, the reviewing court must conclude that the trial court's findings were against the manifest weight of the evidence. *People v. Johnson*, 2023 IL App (5th) 230714, ¶ 14; *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). "Under the manifest weight standard, we give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses." *Id.* The trial court's ultimate pretrial release determination will not be reversed unless the determination was an abuse of discretion. See *Johnson*, 2023 IL App (5th) 230714, ¶ 13; *Trottier*, 2023 IL App (2d) 230317, ¶ 13. "An abuse of discretion occurs where the circuit court's decision is arbitrary, unreasonable, or fanciful or where no reasonable person would have taken the position adopted by the circuit court." *People v. Heineman*, 2023 IL 127854, ¶ 59.

¶ 21    OSAD acknowledges that this court has already addressed the appropriate standard of review applicable to decisions pursuant to the Act but argues we should implement a *de novo* review as explained in the special concurrence in *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 98-102 (Ellis, J., specially concurring). According to the special concurrence in *Saucedo*, a *de novo* standard of review is warranted because detention hearings usually do not involve live

10

testimony, and therefore the trial court is no longer in a superior position to the appellate court to evaluate the evidence. *Id.* The *Saucedo* special concurrence also points to the gravity of the question involved as justification for a *de novo* standard of review. *Id.* ¶ 104.

¶ 22 As support for its argument for *de novo* review, the special concurrence in *Saucedo* explains that the Illinois Supreme Court in *In re D.T.*, 212 Ill. 2d 347 (2004), rejected the deferential abuse of discretion standard for a best-interests determination in child custody or parental right termination cases due to the fundamental liberty interest in parental care. *Saucedo*, 2024 IL App (1st) 232020, ¶¶ 108-110. The *Saucedo* conclusion is misguided as *In re D.T.* determined the burden of proof the State must meet at a best-interest hearing, not the standard of review on appeal. *In re D.T.*, 212 Ill. 2d at 358, 366. Moreover, despite a parent's fundamental liberty interest in the care, custody, and management of their child, an appellate court reviews a trial court's best interest of the child determination only to determine if that finding is against the manifest weight of the evidence. *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 32. Therefore, like appellate review of best-interest determinations, we will continue to review the trial court's findings under a manifest weight of the evidence standard and disagree that the standard undermines the importance of the question at hand.

¶ 23 We also find the argument that *de novo* review is required because there is no live testimony at most detention hearings is unpersuasive. All of the cases cited by the *Saucedo* special concurrence in support of this position regard documented testimony (discovery depositions or transcripts) or other documentary evidence. *Saucedo*, 2024 IL App (1st) 232020, ¶¶ 99-100 (collecting cases). Proffers differ from purely documentary evidence in that proffers do not represent a wholly objective view of the evidence. A proffer apprises the court of "what the offered evidence is or what the expected testimony will be, by whom it will be presented and its purpose."

11

(Internal quotation marks omitted.) *People v. Weinke*, 2016 IL App (1st) 141196, ¶ 41. The State and defendant are allowed to present competing proffers of evidence, as long as the evidence is based upon reliable information. 725 ILCS 5/110-6.1(f)(2) (West 2022). Pretrial detention hearings also differ in that "[t]he rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." *Id.* § 110-6.1(f)(5). A pretrial detention hearing therefore necessarily requires the court to consider the reliability of the evidence as presented and weigh the competing proffers to determine whether the State met its burden of proof. We therefore find pretrial detention hearings are distinguishable from the cases relied upon in the *Saucedo* special concurrence. Accordingly, the *Saucedo* special concurrence fails to convince this court to alter our standard of review.

¶ 24　　Turning to the merits of the appeal, OSAD argues that defendant's detention order should be vacated because defendant's prior convictions do not elevate his DUI to a detainable Class X offense. Defendant argues that the Class X felony for DUI requires the current offense to be at least defendant's sixth DUI and while the State contended there were four prior DUI convictions in Illinois and one in Indiana, the State was incorrect in stating that defendant was convicted of a DUI in Douglas County in 2006. Defendant contends although the issue was not raised in his notice of appeal, it is nevertheless not forfeited where the admonishments following the detention hearing failed to notify defendant that omitting an issue from the notice of appeal would result in forfeiture. He requests this court reconsider our position regarding forfeiture in *People v. Robinson*, 2024 IL App (5th) 231099, because it is a defendant's personal duty to file a notice of appeal, and not that of defense counsel, it is unfair to input such legal knowledge on a *pro se* litigant.

¶ 25　　Defendant's argument lacks merit where defense counsel filed defendant's notice of appeal in this case. Moreover, defendant's argument misconstrues *Robinson*, as it did not hold an issue is

forfeited where the issue is not raised in the notice of appeal. Rather, *Robinson* determined that no rule required defendant to be admonished that the failure to raise the issue or claim of error on appeal would result in forfeiture. *Id.* ¶ 18. *Robinson*, however, explained that Rule 604(h) required defendant's notice of appeal or memorandum to contain the grounds for relief and defendant must object to the alleged error in the lower court to avoid forfeiture. *Id.* ¶¶ 19-20. Because the defendant in *Robinson* failed to raise the error in the trial court, the argument was forfeited. *Id.* ¶ 21.

¶ 26    Like *Robinson*, defendant here failed to allege the State's proffer was incorrect. Nor was any objection raised as to the State's proffer. As such, we find the issue forfeited.

¶ 27    Alternatively, citing *People v. Smith*, 2016 IL App (1st) 140496, ¶ 15, defendant contends the issue could be addressed as plain error because the court's mistaken application of a statutory definition to a nonqualifying offense violates the defendant's basic right to liberty. An exception to the forfeiture rule is the plain error doctrine. *People v. Sebby*, 2017 IL 119445, ¶ 48. Under such doctrine, we may excuse defendant's procedural default when a clear and obvious error occurred and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *Id.* The first step in determining whether plain error applies, however, is determining whether a clear or obvious error occurred. *Id.* ¶ 49.

¶ 28    While the pretrial investigation report showed that defendant was convicted of driving on a revoked/suspended license for a second time in Douglas County case No. 05-DT-59, the State contended the publicly available records for the case on the website "judici.com" showed that a conviction was entered on the DUI charge. The record does not contain the information the State

13

relied upon at the hearing. Instead, OSAD attached—to its memorandum—a printout of the information for Douglas County case No. 05-DT-59 found on judici.com. However, "attachments to briefs which are not otherwise of record are not properly before a reviewing court and cannot be used to supplement the record." *Denny v. Haas*, 197 Ill. App. 3d 427, 430 (1990); see also *People v. Henderson*, 136 Ill. App. 3d 1041, 1045 (1985). At no time did OSAD avail itself of the procedures set forth in Rule 329 to supplement the record. Ill. S. Ct. R. 329 (eff. July 1, 2017). Nevertheless, we find we can take judicial notice of the public records for Douglas County case No. 05-DT-59 on "judici.com." See *People v. Dyer*, 2024 IL App (4th) 231524, ¶ 11; *People v. Culp*, 2021 IL App (4th) 200517-U, ¶ 39.

¶ 29    Our review of the information shows that it is unclear which charge defendant pled to in Douglas County case No. 05-DT-59. The disposition section shows judgment was entered on a driving on a revoke/suspended license charge and that the State filed a motion to dismiss the DUI charge. https://www.judici.com/courts/cases/case_dispositions.jsp?court=IL021015J&ocl=IL021015J,2005DT59,IL021015JL2005DT59D1 (last visited Mar. 12, 2024). However, the history section shows that on July 7, 2005, the State charged defendant with one count of DUI. https://www.judici.com/courts/cases/case_history.jsp?court=IL021015J&ocl=IL021015J,2005DT59,IL021015JL2005DT59D1 (last visited Mar. 12, 2024). On July 18, 2005, the State filed a verified information charging defendant in count II with DUI. *Id.* The history shows on January 17, 2006, defendant entered a plea of guilty as to count II and the court granted the State's motion to dismiss count I. *Id.* The sentence, as described in the history section, also indicates defendant was convicted of DUI where the court ordered defendant to pay a DUI equipment assessment of $1000 and prohibited good-conduct credit until defendant participates in and completes a substance abuse treatment program. *Id.* Moreover, the imposed sentence of 3½ years'

14

imprisonment (*id.*) is more consistent with a fourth DUI conviction than a second driving on a revoked/suspended license. Compare 625 ILCS 5/11-501(c-1)(3) (West 2004) ("A person who violates subsection (a) a fourth or subsequent time, if the fourth or subsequent violation occurs during a period in which his or her driving privileges are revoke or suspended ***, is guilty of a Class 2 felony ***.") and 730 ILCS 5/5-8-1(a)(5) (West 2006) ("for a Class 2 felony, the sentence shall be not less than 3 years and not more than 7 years") with 625 ILCS 5/6-303(d) (West 2004) ("Any person convicted of a second violation of this Section shall be guilty of a Class 4 Felony ***.") and 730 ILCS 5/5-8-1(a)(7) (West 2006) ("for a Class 4 felony, the sentence shall be not less than 1 year and not more than 3 years"). Given the conflicting information, we cannot find the State's representation of defendant's criminal history or the court's finding of a detainable offense, was clear or obvious error. Furthermore, defendant's criminal history contained in the pretrial investigation report actually shows four prior violations of DUI without considering Douglas County case No. 05-DT-59. Plain error therefore does not apply, and defendant's forfeiture is not excused. See *People v. Jones*, 2020 IL App (4th) 190909, ¶ 179 ("Absent a clear or obvious error ***, neither the doctrine of plain error nor a theory of ineffective assistance affords any relief from the forfeiture.").

¶ 30    OSAD next argues that the court's finding of dangerousness was not supported by the record. This issue was also raised in defendant's notice of appeal. The notice of appeal argued that the State only cited defendant's prior convictions to support its contention that defendant presented a real and present threat. OSAD's memorandum added that the State only referred to vague Illinois Vehicle Code violations and provided no facts to conclude defendant's driving was dangerous. OSAD further contended that there was no evidence that defendant's prior convictions were based on dangerous behavior, beyond the old 2010 domestic battery conviction. OSAD argues that

15

defendant's VPRAI-R score demonstrated he was not a threat to anyone. OSAD contends the court rested its finding on its own personal beliefs about DUI offenses, but a finding that DUIs are inherently dangerous is rebutted by section 110-6.1 which lists dozens of offenses that are always detention-eligible, and DUI is not on the list. OSAD also argues that an aggravated DUI is only detainable if the defendant's criminal history makes the offense a nonprobationable Class X felony and proof of a detainable charge is insufficient to show dangerousness, citing *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18.

¶ 31    The State contends it sufficiently proved defendant presented a real and present threat where it presented evidence that "defendant was charged and convicted of DUI on five prior occasions, the pending charge being his sixth." It also points to its argument below that "the legislature made this a Class X felony for a reason" and "defendant continues to drive while intoxicated and it's putting the community at risk every time he gets behind the wheel." The State further argues defendant continues to drive in general, despite the fact that defendant's license was revoked after his first DUI in 2000.

¶ 32    In *Stock*, the court found the State failed to prove there were no conditions or combination of conditions that could mitigate the danger posed by defendant where the State offered no evidence to support that conclusion and failed to discuss any conditions. *Id.* ¶ 17. *Stock* reasoned that "[i]f the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release." *Id.* ¶ 18. Setting aside the fact that *Stock* addresses the completely different issue of conditions that mitigate dangerousness, the record here undermines any reliance on *Stock* as the trial court specifically stated it was not making its finding of dangerousness solely on the offense charged. Therefore, reliance on *Stock* is inapposite if the State

16

presented sufficient evidence—beyond the offense charged—to show dangerousness. When considering sufficiency of the evidence arguments, "the reviewing court must view the evidence 'in the light most favorable to the prosecution.' " *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This means the reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *Id.*

¶ 33 Here, the State was required to show "by clear and convincing evidence" that defendant posed a real and present threat to the safety of any person(s) or the community based on the specific articulable facts of the case. "Clear and convincing evidence is 'that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question.' " *People v. Pitts*, 2024 IL App (1st) 232336, ¶ 29 (quoting *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12). As such, we review the evidence, in a light most favorable to the prosecution, to determine if any rational trier of fact could have found that the State presented clear and convincing evidence that defendant posed a real and present threat to the safety of any person(s) or the community based on the specific articulable facts of the case.

¶ 34 Contrary to defendant's argument on appeal, the trial court's finding of dangerousness was not based solely on the fact that defendant was charged with an aggravated DUI. The statute provides numerous factors that the court "may" consider in determining the issue of dangerousness. See 725 ILCS 5/110-6.1(g) (West 2022). However, the statute specifically declined to limit the court's considerations to the listed factors. *Id.* ("The court may *** consider, *but shall not be limited to*, evidence or testimony concerning" the factors listed. (Emphasis added.)). Further, the listed factors include "the nature and circumstances of any offense charged." Therefore, we cannot find that any consideration by the trial court of the fact that this was defendant's sixth DUI was inappropriate.

17

¶ 35    While OSAD claims this case is similar to that in *Stock*, 2023 IL App (1st) 231753, we disagree. The issue in *Stock* was the lack of any other evidence beyond the elements of the alleged offense. *Id.* ¶ 19. *Stock* stated that "more is required." *Id.* ¶ 18. Here, more was provided.

¶ 36    In addition to considering the fact that this was defendant's sixth DUI, the evidence submitted and considered also included defendant's many prior convictions for driving on a revoked or suspended license convictions. From this evidence the trial court could, and did, draw a clear inference that defendant was a higher risk for recidivism than shown by the VPRAI-R. The court specifically found the instrument did not properly consider defendant's alcohol abuse in assessing the risk level. The charge of aggravated DUI could be appropriately considered in determining that the defendant posed a real and present threat to the safety of the community, as the court could have properly inferred that he was likely to continue driving illegally, and under the influence if released.

¶ 37    The evidence submitted and considered by the court also included the fact that defendant had alcohol, which still contained ice, within the passenger compartment of the vehicle. While defendant claimed the liquid in the jug was urine, it was the factfinder's duty to consider which of the statements was more credible. The court considered defendant's prior history in conjunction with his current charge and inferred that defendant returned to alcohol abuse. The court found that defendant "relapsed" and noted that when this previously happened, defendant was repeatedly an "extreme danger" to the public. The court clearly believed that defendant's alcohol abuse was an aggravating consideration in determining the defendant's level of risk to the community.

¶ 38    We further note that the evidence revealed that defendant did not immediately pull over when the officers activated the emergency lights. Instead, defendant continued on his way and only later pulled over, claiming that he did not see the lights. Whether the defendant did not perceive

18

an officer attempting to pull him over for a distance or chose not to pull over despite seeing the officer's lights behind him, the court could have properly assessed those actions as indicators of impaired, and thus dangerous, driving.

¶ 39 The court also noted that defendant's license was revoked at the time of the incident. As such, defendant was aware that, for the past 24 years including the date of the arrest at issue here, it was illegal for him to drive under any circumstances, let alone while under the influence of alcohol. Nevertheless, he has continued to do so, at times while under the influence of alcohol.

¶ 40 OSAD further argues that DUIs are not inherently dangerous because section 110-6.1 (725 ILCS 5/110-6.1 (West 2022)) lists dozens of offenses that are always detention-eligible, and DUI is not on the list. We do not find the exclusion in section 110-6.1 of misdemeanor DUI to be a determination by the legislature that DUIs are not inherently dangerous.

¶ 41 Courts have long recognized that the " 'public interest in curbing the epidemic number of deaths and injuries attributable to drunk driving by keeping unsafe drivers off the streets outweighs the interests of convicted drunk drivers in regaining their driving privileges.' " *Jones*, 352 Ill. App. 3d at 322-23 (quoting *Grams v. Ryan*, 263 Ill. App. 3d 390, 395 (1994)); see also *Clark v. White*, 343 Ill. App. 3d 689, 693 (2003). Further, when addressing the constitutionality of DUI roadblocks, the Illinois Supreme Court first addressed the public interest and found "there can be no question that drivers under the influence of alcohol pose a substantial threat to the welfare of the citizenry of Illinois." *People v. Bartley*, 109 Ill. 2d 273, 285 (1985). They continued by stating, "The problem is so serious that, as in other jurisdictions, we hold that this interest is compelling and will therefore justify some intrusion on the unfettered movement of traffic in order to reduce alcohol-related accidents and deter driving under the influence." *Id.* In support, the court noted that 58% of the 43,945 highway fatalities in the United States in 1982 involved drunk drivers. *Id.*

19

at 285-86. Therefore, while we agree that only certain forms of aggravated DUIs are on the list detention-eligible offenses found in section 110-6.1, we strongly disagree with OSAD's contention that such exclusion equates to a conclusion that DUIs are not inherently dangerous.

¶ 42    Here, the court's finding of dangerousness stemmed from its finding that defendant drove under the influence for the sixth time, an offense the court found was an enormous danger to community safety. The court found that defendant had "relapsed" into alcohol abuse which, based on the defendant's history and characteristics, carries the likelihood of his return to extremely dangerous behavior by driving illegally and while impaired. These findings, coupled with defendant's clear disregard of Illinois driving laws—as evidenced by his continued driving with a revoked license, driving under the influence, and the defendant's exhibited signs of impairment including failure to pull over when lights are activated on emergency vehicles—are sufficient to support the trial court's finding of dangerousness. Accordingly, we hold that the trial court's finding of dangerousness was not against the manifest weight of the evidence.

¶ 43    Finally, as noted above, defendant's notice of appeal did not list the issue that the State failed to meet its burden of proving that no condition, or combination of conditions, could mitigate the real and present threat to the safety of any persons or the community. Despite defendant's failure to include this issue in his notice of appeal, OSAD argues in its memorandum that the court's finding that no condition, or combination of conditions, could mitigate the real and present threat to the safety of the community was "sheer speculation." In support, OSAD relies on the trial court's finding that defendant had relapsed and further inferred that "in his many, many DUI sentences [defendant] has repeatedly had the opportunity to engage in treatment and learn how dangerous his behavior was."

¶ 44 There was ample evidence before the court to reasonably infer that the defendant had relapsed into alcohol abuse. Similarly, the court could reasonably infer that the defendant could have previously engaged in treatment to understand how dangerous his behavior was. OSAD concedes the trial court's finding was based on inference, not fact. "An inference is a factual conclusion that can rationally be drawn by considering other facts." *People v. Funches*, 212 Ill. 2d 334, 340 (2004). "Thus, an inference is merely a deduction that the fact finder may draw in its discretion, but is not required to draw as a matter of law." *Id.* A "reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *Cunningham*, 212 Ill. 2d at 280. However, "if only one conclusion may reasonably be drawn from the record, a reviewing court must draw it even if it favors the defendant." *Id.*

¶ 45 As the court pointed out, the defendant had five prior DUI convictions. To credit OSAD's argument, the court would have to believe that, at least in the four prior convictions garnered in Illinois, the defendant was sentenced in contravention of section 11-501 of the Illinois Vehicle Code (625 ILCS 5/11-501 (West 2000)). During each of the defendant's prior DUI convictions, section 11-501(e) required an alcohol evaluation be conducted prior to sentencing, and that the defendant undergo the imposition of treatment as appropriate.[2] Even assuming, arguendo, that the court's inference that the defendant had been sentenced in accordance with the law was improper speculation, it is undeniable that the defendant had ample time over a 24-year timespan to seek treatment as a personal choice after his DUIs. As such, we find this argument unpersuasive.

¶ 46 While OSAD's memorandum contains numerous proposed conditions of release, the memorandum ignores the evidence. Despite having a revoked driver's license for 24 years,

---

[2]The same requirement is currently codified in section 11-501.01 of the Illinois Vehicle Code (625 ILCS 5/11-501.01 (West 2022)).

21

defendant continued to drive regardless of any legal restriction imposed by the State. This evidence supports the court's inference related to defendant's continued disregard of any type of law or administrative sanction issued in Illinois. Accordingly, we hold that the trial court's finding that no condition, or combination of conditions, would mitigate defendant's dangerousness was not against the manifest weight of the evidence. As none of the court's findings were against the manifest weight of the evidence, we further hold that the trial court's detention order was not an abuse of discretion.

¶ 47                                III. CONCLUSION

¶ 48      The evidence was sufficient to support the trial court's findings that the proof was evident, or the presumption great, that defendant committed the alleged offense, defendant posed a real and present danger to the community, and no condition, or combination of conditions, would mitigate the real and present threat posed to the safety of the community. Accordingly, we hold that the trial court's findings were not against the manifest weight of the evidence and the trial court's order of detention was not an abuse of discretion.


¶ 49      Affirmed.

22